# In the United States Court of Appeals for the Fifth Circuit

GERALD KRELL, REPRESENTATIVE OF THE ESTATE OF JASON KRELL, DECEASED;
MICHELLE MARTIN, REPRESENTATIVE OF THE ESTATE OF QUINON PITRE;
CONSTANCE MILLARD, REPRESENTATIVE OF THE ESTATE OF JASON KRELL,
DECEASED; DARREN ANTHONY ENCALADE, SR.; CAMERON ENCALADE; JANE
HARTFORD, ADMINISTRATRIX OF THE ESTATE OF ANTHONY HARTFORD; ANTRANAE
HARTFORD; AMANDA WALCOTT-HARRIS, CO-ADMINISTRATRIX OF THE SUCCESSION
OF GREGORY WALCOTT; RUSSELL WAYNE SADDLER, CO-ADMINISTRATOR OF THE
SUCCESSION OF GREGORY WALCOTT; BRANDY WILLIAMS NORRIS, ADMINISTRATOR
OF THE SUCCESSION OF ERNEST J. WILLIAMS, JR.; BRYSON WILLIAMS; ZACHARY
LOUVIERE; CHARLES SCALLAN; BRANDON AUCOIN,

*Plaintiffs-Appellees,*

v.

AMERICAN BUREAU OF SHIPPING; ABS GROUP OF COMPANIES, INC.; ABSG
CONSULTING, INC.; ABS QUALITY EVALUATIONS, INC.; ABS GROUP LLC,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civil Case No. 4:24-cv-01694

## RECORD EXCERPTS

John J. Sullivan
Brian P. R. Eisenhower
HILL RIVKINS LLP
1000 N. Post Oak, Ste. 220
Houston, Texas 77055

James M. Kimbell
CLARK HILL PLC
1000 Louisiana Street, Suite 2800
Houston, Texas 77002

*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

| Tab No. | Document | ROA |
|---------|----------|-----|
| 1 | Docket Sheet | ROA.1-9 |
| 2 | Notice of Appeal | ROA.1050-52 |
| 3 | Order on Motion to Remand | ROA.986-93 |
| 4 | Order on Motion for Reconsideration | ROA.1049 |
| 5 | Excerpt of Plaintiffs' First Amended Petition | ROA.38-42 |
| 6 | Excerpt of Defendants' First Amended Answer | ROA.110 |
| 7 | Excerpts of USCG-ABS Agreement | ROA.159-64, 166-72 |
| 8 | Navigation and Vessel Inspection Circular 3-97 | ROA.937-44 |
| 9 | Declaration of Louis O'Donnell | ROA.945-51 |
| 10 | Declaration of Thomas M. Gruber | ROA.952-56 |

**TAB 1**

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Houston)
# CIVIL DOCKET FOR CASE #: 4:24-cv-01694
# Internal Use Only

Krell et al v. American Bureau of Shipping et al DO NOT DOCKET. CASE HAS BEEN REMANDED.
Assigned to: Judge David Hittner
Demand: $500,000,000
 Case in other court:   190th Judicial District Court of Harris County, TX, 24-22725
Cause: 28:1442 Notice of Removal

Date Filed: 05/06/2024
Date Terminated: 07/18/2024
Jury Demand: None
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

| | | |
|---|---|---|
| **Gerald Krell**<br>*Representative of the Estate of Jason Krell, deceased* | represented by | **Eric Jonathan Rhine**<br>Spagnoletti Law Firm<br>401 Louisiana<br>8th Floor<br>Houston, TX 77002<br>713-653-5600<br>Email: erhine@spaglaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Marcus Raymond Spagnoletti**<br>Spagnoletti Law Firm<br>401 Louisiana St<br>8th Floor<br>Houston, TX 77002<br>713-653-5600<br>Email: mspagnoletti@spaglaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Bryon A Rice**<br>Hicks Davis Wynn PC<br>3555 Timmons Lane<br>Suite 1000<br>Houston, TX 77027<br>713-518-1635<br>Fax: 713-277-7720<br>Email: brice@hdwlegal.com<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Michelle Martin**<br>*Representative of the Estate of Quinon Pitre* | represented by | **Eric Jonathan Rhine**<br>(See above for address)<br>*LEAD ATTORNEY* |

24-20438.1

*ATTORNEY TO BE NOTICED*

**Marcus Raymond Spagnoletti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Constance Millard**<br>*Representative of the Estate of Jason Krell* | represented by | **Eric Jonathan Rhine**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Marcus Raymond Spagnoletti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Darren Anthony Encalade, Sr.** | represented by | **Eric Jonathan Rhine**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Marcus Raymond Spagnoletti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Cameron Encalade** | represented by | **Eric Jonathan Rhine**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Marcus Raymond Spagnoletti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jane Hartford**                    represented by    **Eric Jonathan Rhine**
*Adminstratrix of the Estate of Anthony*              (See above for address)
*Hartford*                                            *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Marcus Raymond Spagnoletti**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Bryon A Rice**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Antranae Hartford**                represented by    **Eric Jonathan Rhine**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Marcus Raymond Spagnoletti**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Bryon A Rice**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Amanda Walcott-Harris**            represented by    **Eric Jonathan Rhine**
*Co-Administratrix of the Succession of*              (See above for address)
*Gregory Walcott*                                     *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Marcus Raymond Spagnoletti**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Bryon A Rice**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

                                     represented by

**Russell Wayne Saddler**
*Co-Administrator of the Succession of*
*Gregory Walcott*

**Eric Jonathan Rhine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Raymond Spagnoletti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brandy Williams Norris**
*Administrator of the Succession of Ernest J.*
*Williams, Jr.*

represented by **Eric Jonathan Rhine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Raymond Spagnoletti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bryson Williams**

represented by **Eric Jonathan Rhine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Raymond Spagnoletti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Zachary Louviere**

represented by **Eric Jonathan Rhine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Raymond Spagnoletti**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Charles Scallan**                    represented by    **Eric Jonathan Rhine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Raymond Spagnoletti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brandon Aucoin**                     represented by    **Eric Jonathan Rhine**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marcus Raymond Spagnoletti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**American Bureau Of Shipping**        represented by    **Hannah Elizabeth Taylor**
Hill Rivkins
1000 N. Post Oak Rd.
Ste. 220
Houston, TX 77055
713-222-1515
Email: htaylor@hillrivkins.com
*ATTORNEY TO BE NOTICED*

**John James Sullivan**
Hill Rivkins LLP

1000 N. Oak Post Road
Ste 220
Houston, TX 77055
212-669-0600
Email: jsullivan@hillrivkins.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**ABS Group of Companies, Inc.**                    represented by    **James M Kimbell**
Clark Hill PLC
1000 Louisiana Street
Suite 2800
Houston, TX 77002
713-951-5600
Email: jkimbell@clarkhill.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hannah Elizabeth Taylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John James Sullivan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ABSG Consulting, Inc.**                    represented by    **James M Kimbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hannah Elizabeth Taylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John James Sullivan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ABS Quality Evaluations, Inc.**                    represented by    **James M Kimbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hannah Elizabeth Taylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John James Sullivan**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**ABS Group LLC**                                    represented by   **James M Kimbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hannah Elizabeth Taylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John James Sullivan**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/06/2024 | 1 (p.10) | NOTICE OF REMOVAL from District Court, Harris County, TX, case number 2024-22725 (Filing fee $ 405 receipt number ATXSDC-31579386) filed by ABSG Consulting, Inc., ABS Quality Evaluations, Inc., ABS Group of Companies, Inc., American Bureau Of Shipping, ABS Group LLC. (Attachments: # 1 (p.10) Exhibit A-1 -- State Court Executed Process, # 2 (p.76) Exhibit A-2 -- State Court Pleadings, # 3 (p.78) Exhibit B -- State Court Docket Sheet, # 4 (p.80) Exhibit C -- Index of Matters Being Filed, # 5 (p.83) Exhibit D -- List of Counsel, # 6 (p.96) Exhibit E -- Notice to State Court of Removal) (Sullivan, John) (Entered: 05/06/2024) |
| 05/06/2024 | 2 (p.76) | CORPORATE DISCLOSURE STATEMENT by ABS Group LLC, ABS Group of Companies, Inc., ABS Quality Evaluations, Inc., ABSG Consulting, Inc., American Bureau Of Shipping, filed. (Sullivan, John) (Entered: 05/06/2024) |
| 05/07/2024 | 3 (p.78) | Civil Cover Sheet by ABS Group LLC, ABS Group of Companies, Inc., ABS Quality Evaluations, Inc., ABSG Consulting, Inc., American Bureau Of Shipping, filed. (Sullivan, John) (Entered: 05/07/2024) |
| 05/07/2024 | 4 (p.80) | NOTICE of Appearance by Hannah E. Taylor on behalf of ABS Group LLC, ABS Group of Companies, Inc., ABS Quality Evaluations, Inc., ABSG Consulting, Inc., American Bureau Of Shipping, filed. (Taylor, Hannah) (Entered: 05/07/2024) |
| 05/07/2024 | 5 (p.83) | ANSWER to Complaint by ABS Group LLC, ABS Group of Companies, Inc., ABS Quality Evaluations, Inc., ABSG Consulting, Inc., American Bureau Of Shipping, filed. (Sullivan, John) (Entered: 05/07/2024) |
| 05/08/2024 | 6 (p.96) | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 7/25/2024 at 10:15 AM by video before Magistrate Judge Peter Bray. (Signed by Judge David Hittner) Parties notified. (ddb4) (Entered: 05/08/2024) |
| 05/23/2024 | 7 (p.97) | CERTIFICATE OF INTERESTED PARTIES by ABS Group LLC, ABS Group of Companies, Inc., ABS Quality Evaluations, Inc., ABSG Consulting, Inc., American Bureau Of Shipping, filed. (Taylor, Hannah) (Entered: 05/23/2024) |
| 05/23/2024 | 8 (p.99) | CERTIFICATE OF INTERESTED PARTIES by Amanda Walcott-Harris, Brandon Aucoin, Brandy Williams Norris, Constance Millard, Cameron Encalade, Darren |

| | | Anthony Encalade, Sr., Gerald Krell, Antranae Hartford, Jane Hartford, Zachary Louviere, Michelle Martin, Russell Wayne Saddler, Charles Scallan, Bryson Williams, filed. (Rhine, Eric) (Entered: 05/23/2024) |
|---|---|---|
| 05/24/2024 | 9 (p.102) | AMENDED ANSWER to by ABS Group LLC, ABS Group of Companies, Inc., ABS Quality Evaluations, Inc., ABSG Consulting, Inc., American Bureau Of Shipping, filed. (Sullivan, John) (Entered: 05/24/2024) |
| 06/05/2024 | 10 (p.116) | NOTICE of Appearance by Bryon A. Rice on behalf of Amanda Walcott-Harris, Brandon Aucoin, Brandy Williams Norris, Constance Millard, Cameron Encalade, Darren Anthony Encalade, Sr., Gerald Krell, Antranae Hartford, Jane Hartford, Zachary Louviere, Michelle Martin, Russell Wayne Saddler, Charles Scallan, Bryson Williams, filed. (Rice, Bryon) (Entered: 06/05/2024) |
| 06/05/2024 | 11 (p.118) | Opposed MOTION to Remand by Amanda Walcott-Harris, Brandon Aucoin, Brandy Williams Norris, Constance Millard, Cameron Encalade, Darren Anthony Encalade, Sr., Gerald Krell, Antranae Hartford, Jane Hartford, Zachary Louviere, Michelle Martin, Russell Wayne Saddler, Charles Scallan, Bryson Williams, filed. Motion Docket Date 6/26/2024. (Attachments: # 1 (p.10) Exhibit A, # 2 (p.76) Exhibit B, # 3 (p.78) Exhibit C, # 4 (p.80) Exhibit D, # 5 (p.83) Exhibit E - part 1, # 6 (p.96) Exhibit E - part 2, # 7 (p.97) Proposed Order Granting Remand) (Rice, Bryon) (Entered: 06/05/2024) |
| 06/26/2024 | 12 (p.868) | RESPONSE in Opposition to 11 (p.118) Opposed MOTION to Remand, filed by ABS Group LLC, ABS Group of Companies, Inc., ABS Quality Evaluations, Inc., ABSG Consulting, Inc., American Bureau Of Shipping. (Attachments: # 1 (p.10) Exhibit 1 -- First Amended Petition, # 2 (p.76) Exhibit 2 -- USCG Circular NVIC 10-82, # 3 (p.78) Exhibit 3 -- USCG Circular NVIC 3-97, # 4 (p.80) Affidavit Declaration of Louis O'Donnell, # 5 (p.83) Affidavit Declaration of Thomas Gruber, # 6 (p.96) Proposed Order) (Sullivan, John) (Entered: 06/26/2024) |
| 06/27/2024 | 13 (p.959) | Unopposed MOTION for Extension of Time to File Reply to Opposition of Defendants to Plaintiffs' Motion to Remand by Amanda Walcott-Harris, Brandon Aucoin, Brandy Williams Norris, Constance Millard, Cameron Encalade, Darren Anthony Encalade, Sr., Gerald Krell, Antranae Hartford, Jane Hartford, Zachary Louviere, Michelle Martin, Russell Wayne Saddler, Charles Scallan, Bryson Williams, filed. Motion Docket Date 7/18/2024. (Attachments: # 1 (p.10) Proposed Order) (Spagnoletti, Marcus) (Entered: 06/27/2024) |
| 06/28/2024 | 14 (p.967) | ORDER Granting 13 (p.959) Plaintiffs' Motion for Extension of Time to File Reply In Support of its Motion to Remand.(Signed by Judge David Hittner) Parties notified. (mmm4) (Entered: 06/28/2024) |
| 06/28/2024 | 15 (p.969) | NOTICE of Resetting. Parties notified. Initial Conference set for 7/19/2024 at 10:15 AM in by video before Magistrate Judge Peter Bray, filed. (jmm4) (Entered: 06/28/2024) |
| 07/09/2024 | 16 (p.970) | JOINT DISCOVERY/CASE MANAGEMENT PLAN by ABS Group LLC, ABS Group of Companies, Inc., ABS Quality Evaluations, Inc., ABSG Consulting, Inc., American Bureau Of Shipping, filed. (Sullivan, John) (Entered: 07/09/2024) |
| 07/10/2024 | 17 (p.980) | REPLY to Response to 11 (p.118) Opposed MOTION to Remand, filed by Gerald Krell. (Rice, Bryon) (Entered: 07/10/2024) |
| 07/18/2024 | 18 (p.986) | ORDER granting 11 (p.118) Motion to Remand. This case is hereby REMANDED to the Harris County District Court for the 190th Judicial District Court. (Signed by |

| | | Judge David Hittner) Parties notified. (jww4) (Entered: 07/18/2024) |
|---|---|---|
| 07/18/2024 | 19 (p.1057) | (Court only) Document(s) Sent by FedEx to the Clerk of Court for the 190th Judicial District Court of Harris County, TX - receipt attached, access restricted to court users for privacy reasons - re: 18 (p.986) Order on Motion to Remand, filed. (jww4) (Entered: 07/18/2024) |
| 07/25/2024 | | ***Delivery Confirmation for delivery date(s) 7/19/2024 re: 19 (p.1057) Document(s) Sent, filed. (rlm4) (Entered: 07/25/2024) |
| 08/15/2024 | 20 (p.994) | Opposed MOTION for Reconsideration of 18 (p.986) Order on Motion to Remand by ABS Group LLC, ABS Group of Companies, Inc., ABS Quality Evaluations, Inc., ABSG Consulting, Inc., American Bureau Of Shipping, filed. Motion Docket Date 9/5/2024. (Attachments: # 1 (p.10) Exhibit 1 -- Caris MPI v. UnitedHealthcare 108 F.4th 340 (5th Cir. 2024), # 2 (p.76) Proposed Order) (Sullivan, John) (Entered: 08/15/2024) |
| 09/03/2024 | 21 (p.1037) | RESPONSE in Opposition to 20 (p.994) Opposed MOTION for Reconsideration of 18 (p.986) Order on Motion to Remand, filed by Amanda Walcott-Harris, Brandon Aucoin, Brandy Williams Norris, Constance Millard, Cameron Encalade, Darren Anthony Encalade, Sr., Gerald Krell, Antranae Hartford, Jane Hartford, Zachary Louviere, Michelle Martin, Russell Wayne Saddler, Charles Scallan, Bryson Williams. (Rice, Bryon) (Entered: 09/03/2024) |
| 09/05/2024 | 22 (p.1049) | ORDER denying 20 (p.994) Motion for Reconsideration of the Court's Order of Remand. (Signed by Judge David Hittner) Parties notified. (jww4) (Entered: 09/05/2024) |
| 10/02/2024 | 23 (p.1050) | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 18 (p.986) Order on Motion to Remand, 22 (p.1049) Order on Motion for Reconsideration by ABS Group LLC, ABS Group of Companies, Inc., ABS Quality Evaluations, Inc., ABSG Consulting, Inc., American Bureau Of Shipping (Filing fee $ 605, receipt number ATXSDC-32277222), filed. (Sullivan, John) (Entered: 10/02/2024) |
| 10/03/2024 | 24 (p.1053) | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 23 (p.1050) Notice of Appeal. Fee status: Paid, filed. (Attachments: # 1 (p.10) Notice of Appeal) (mp1) (Entered: 10/03/2024) |
| 10/03/2024 | | Appeal Review Notes re: 23 (p.1050) Notice of Appeal. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.No hearings were held in the case - no transcripts. Number of DKT-13 Forms expected: 1, filed. (mp1) (Entered: 10/03/2024) |
| 10/09/2024 | | (Court only) Set/Cleared Flags. Appeal_Nat flag cleared. ELECTRONIC RECORD ON APPEAL REQUESTED from District Court for 4:24-CV-1694. Electronic ROA due on 10/24/2024. [24-20438] (SEP) (edg1) (Entered: 10/09/2024) |

**TAB 2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CONSTANCE MILLARD and GERALD | § | |
| KRELL, Individually and as Representatives | § | |
| of the Estate of Jason Krell, Deceased; | § | |
| MICHELLE MARTIN, as tutrix and next | § | |
| friend of A.P., E.P., and M.S., minors, and as | § | |
| Representative of the Estate of Quinon Pitre, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| - against-. | § | 4:24-cv-1694 |
| | § | |
| AMERICAN BUREAU OF SHIPPING, ABS | § | ADMIRALTY CASE |
| GROUP OF COMPANIES, INC., ABSG | § | |
| CONSULTING INC., ABS QUALITY | § | |
| EVALUATIONS, INC., and ABS GROUP | § | |
| | § | |
| Defendants. | § | |

## NOTICE OF APPEAL

Defendants, American Bureau of Shipping, ABS Group of Companies, Inc.,

ABSG Consulting Inc., ABS Quality Evaluations, Inc., and ABS Group LLC (s/h/a

"ABS Group"), appeal to the United States Court of Appeals for the Fifth Circuit

from the order granting the Plaintiffs' motion to remand entered on July 18, 2024

("Remand Order," Document No. 18), which is reviewable under 28 U.S.C. §

1447(d) as the case was removed pursuant to 28 U.S.C. § 1442 (*see* Document No.

1, Notice of Removal at 1, 3, 4-5), and from the order denying Defendants' motion

24-20438.1050

for reconsideration of the Remand Order pursuant to Federal Rule of Civil

Procedure 59(e) entered on September 5, 2024 (Document No. 22).

HILL RIVKINS LLP
Attorneys for Defendants
*American Bureau of Shipping; ABS Group of*
*Companies, Inc.; ABSG Consulting, Inc.; ABS*
*Quality Evaluations, Inc.; and ABS Group*

  /s/ *John J. Sullivan*
John J. Sullivan
SDTX I.D. No.: 1531846
Brian P. R. Eisenhower
SDTX I.D. No.: 3888867
Hannah E. Taylor
SDTX I.D. No. 3805262

HILL RIVKINS LLP
1000 N. Post Oak Rd., Suite 220
Houston, Texas 77055
Tel.:  713-222-1515
Fax:  713-222-1359
Email: jsullivan@hillrivkins.com
          beisenhower@hillrivkins.com
          htaylor@hillrivkins.com

James M. Kimbell
SDTX ID No.: 1627

CLARK HILL PLC
1000 Louisiana Street, Suite 2800,
Houston, Texas 77002
Tel.:  713-951-5665
Fax:  832-397-3544
Email: jkimbell@clarkhill.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2024, I electronically filed the foregoing document with the Clerk of Court for the United States District Court, Southern District of Texas, using the CM/ECF system of the Court, which will cause the electronic case filing system to send a "Notice of Electronic Filing" to all attorneys of record.

/s/ *John J. Sullivan*

John J. Sullivan



**TAB 3**

United States District Court
Southern District of Texas
**ENTERED**
July 18, 2024
Nathan Ochsner, Clerk



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONSTANCE MILLARD *and* GERALD KRELL, *Individually and as representatives of the Estate of Jason Krell,* Deceased; MICHELLE MARTIN, *as executrix and next friend of* A.P., E.P., *and* M.S., *minors, and as representative of the Estate of Quinon Pitre*, | § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. H-24-1694 |
| AMERICAN BUREAU OF SHIPPING, *et al*, | § § § § | |
| Defendants. | § | |

ORDER

Pending before the Court is Plaintiff's Motion to Remand (Document No. 11).

Having considered the motion, submissions, and applicable law, the Court

determines the motion should be granted.

I. BACKGROUND

This is a personal injury case. On April 13, 2021, Plaintiffs ("collectively

referred to as "Krell") were killed or injured when the sea vessel they were aboard,

the *SEACOR Power* ("the Vessel") capsized in the Gulf of Mexico. Krell contends

that Defendants (collectively referred to as "ABS"), a classification society that

inspects maritime vessels for seaworthiness, was negligent in its inspections of the Vessel, proximately causing the death and personal injury of seamen aboard the boat during its sinking.

Based on the foregoing, on April 10, 2024, Krell filed suit against ABS in the Harris County District Court for the 190th Judicial District Court, bringing claims for negligence, negligent misrepresentation and gross negligence. On May 6, 2024, ABS removed this action to this Court on the basis of federal question jurisdiction pursuant to the federal officer removal statute, 28 U.S.C. §1442(a)(1). On June 5, 2024, Krell moved to remand.

## II. STANDARD OF REVIEW

A defendant may remove a case to federal court if the federal court has subject matter jurisdiction to hear the original complaint. 28 U.S.C. § 1441(a).  Federal courts have limited jurisdiction, so any doubts regarding whether federal jurisdiction is proper are resolved against federal jurisdiction. *Acuna v. Brown & Root, Inc*., 200 F.3d 335, 339 (5th Cir. 2000). When evaluating a motion to remand, all factual allegations are considered in the light most favorable to the plaintiff, and any contested fact issues are resolved in the plaintiff's favor. *Guillory v. PPG Indus., Inc*., 434 F.3d 303, 308 (5th Cir. 2005). *Gasch v. Harford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). A removing party must show both the existence

24-20438.987

of federal jurisdiction and the propriety of removal. *Mumfrey v. CVS Pharmacy*, Inc., 719 F.3d 392, 397 (5th Cir. 2013).

A federal court may only assert subject matter jurisdiction over a matter when authorized by the federal constitution or by statute. *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014). A federal court may exercise jurisdiction over any civil action arising under the federal constitution, statutes, or treaties. 28 U.S.C. § 1331. A case arises under federal law when a plaintiff's "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Griffith v. Alcon Rsch., Ltd.*, 712 F. App'x 406, 408 (5th Cir. 2017) (per curiam).

## III. LAW & ANALYSIS

Krell moves to remand this case to state court, contending ABS has improperly removed this case under federal officer jurisdiction. A defendant may remove a state court action under the federal officer removal statute codified if the defendant can show (1) it is a person under the meaning of the statute; (2) it has acted pursuant to the direction of a federal office or agency; (3) the charged conduct relates to an act pursuant to the direction of a federal officer or agency; and (4) it can assert a colorable federal defense. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020).

24-20438.988

Krell argues ABS failed to show three required elements to satisfy removal pursuant to the federal officer removal statute. Krell contends ABS cannot show that: "(1) it acted pursuant to a federal officer's directions; (2) the charged conduct is connected or associated with an act pursuant to a federal officer's directions; and (3) it has asserted a colorable federal defense."[1] ABS contends that: (1) federal officer jurisdiction is proper because ABS is an entity acting on behalf and under the direction of the United States Coast Guard ("USCG"); (2) the allegations against ABS are related to acts performed pursuant to federal direction; and (3) ABS can show a colorable federal defense. The Court will consider whether ABS acted pursuant to the USCG's directions.

A.   *Acting Pursuant to a Federal Officer's Directions*

For a defendant to prevail under the federal officer removal statute, it must show that it was acting under the direction of a federal officer or agency, which requires the federal officer or agency to "exert a sufficient level of subjection, guidance, or control." *St. Charles Surgical Hosp., L.L.C. v. La. Health Ser. & Indem. Co.*, 990 F.3d 447, 455 (5th Cir. 2021).  The Fifth Circuit has made clear that mere compliance with federal regulations is insufficient to satisfy this element, "even if the law involves intense government regulations." *Martin v. LCMC Health*

---

[1] *Plaintiff's Motion to Remand*, Document No. 1 at 1.

*Holdings, Inc.*, 101 F.4th 410 (5th Cir. 2024). To determine whether an entity acted under a federal officer's directions, the Fifth Circuit has instructed courts to examine both the relationship between the private entity and the government, and the contents of the contract. *See St. Charles Surgical Hosp.*, 990 F.3d at 454–455.

Here, Krell contends that this court should follow the decision made in *Jackson v. Am. Bureau of Shipping* and find that "ABS cannot claim federal officer jurisdiction for all acts merely because [the United States Coast Guard] imposes strict standard on ABS before allowing it to perform inspections." *Jackson v. Am. Bureau of Shipping*, 2020 WL 1743541 (S.D. Tex. May 14, 2020) (Miller, J.). Krell supports this contention by arguing that the memorandum of understanding ("the Contract") between ABS and the USCG does not give rise to the kind of subjection, guidance, or control required to satisfy the federal officer removal statute. Krell cites the language of the Contract, which states: "[ABS] is hereby authorized to carry out statutory certification and services on behalf of the Administration,"[2] but points out for the Court that the Contract specifically allows ABS to establish its own rules and regulations to carry out these services, by noting language in the Contract which states: "[ABS] shall establish, publish, and systematically main its rules and/or

---

[2] *Plaintiff's Motion to Remand*, Document No. 11, Exhibit D (*Memorandum of Understanding*) at ¶4.1.

24-20438.990

regulations."[3] Krell contends that the USCG did not exercise adequate control by failing to direct ABS how to perform its inspections or prescribe the rules it should follow in doing so.

ABS contends that it is a recognized organization specifically identified by statute to perform inspections of sea vessels on behalf of the USCG.  ABS further contends that it is a designated agent of the USCG and is subject to extensive regulations that dictate to ABS how to conduct inspections aboard sea vessels. ABS asserts that its statutory relationship with the USCG shows that ABS does not merely comply with federal regulations, but rather, adhered to a litany of statutes and provisions that govern ABS's work on behalf of the USCG.

On balance though, the Federal Circuit has made clear that being subject to pervasive federal regulation alone is not sufficient to confer federal jurisdiction, "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 235–36 (5th Cir. 2022) (citing *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 153 (2007)). Based on the foregoing, the Court finds that ABS failed to demonstrate that the USCG exercised the requisite amount of control such to demonstrate ABS acted pursuant to a federal officer's direction.

---

[3] *Memorandum of Understanding*, *supra* note 2 at ¶7.4.

24-20438.991

*B.     Remaining Elements*

Krell also contends that ABS fails to meet other required elements under the federal officer removal statute, arguing that ABS cannot show either that the charged conduct is connected with an act pursuant to a federal officer's directions, or that ABS has a colorable federal defense. Given the Court's finding above that ABS failed to meet a dispositive element and demonstrate that it acted pursuant to a federal officer's direction, the Court need not address the remaining elements in dispute.

Additionally, the parties are not diverse and there is no other means for this Court to assert subject matter jurisdiction over this case. Thus, this action was not removable on the basis of federal question jurisdiction, as found above, nor is there any other basis for federal subject matter jurisdiction. Accordingly, Krell's motion to remand this action to the Harris County District Court for the 190th Judicial District is granted.

<u>IV. CONCLUSION</u>

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion to Remand (Document No. 4) is **GRANTED**. This case is hereby **REMANDED** to the Harris County District Court for the 190th Judicial District Court.

24-20438.992

SIGNED at Houston, Texas, on this 18th day of July, 2024.

DAVID HITTNER
United States District Judge

24-20438.993

**TAB 4**

United States District Court
Southern District of Texas
**ENTERED**
September 05, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KRELL, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. H-24-1694 |
| | § | |
| AMERICAN BUREAU OF | § | |
| SHIPPING, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Defendant's Motion for Reconsideration of the

Court's Order of Remand (Document No. 20). Having considered the Defendant's

motion, submissions, and applicable law, the Court determines that Defendant's

motion should be denied. Accordingly, the Court hereby

**ORDERS** that Defendant's Motion for Reconsideration of the Court's Order

of Remand (Document No. 20) is **DENIED**.

SIGNED at Houston, Texas, on this __*5*__ day of September, 2024.

_____
DAVID HITTNER
United States District Judge

24-20438.1049

**TAB 5** 

addition to publishing and enforcing classification rules, ABS also provides technical requirements for offshore vessels and vessel safety.  Part of ABS's responsibility is to inspect the vessels it classifies, and identify hazards onboard those vessels, before tragedies like this one occur.  ABS even has the ability to withhold classification or require appropriate remedial measures to rectify deficiencies in the vessels it classifies.

5.5     However, ABS had more involvement than simply classing the vessel involved in this incident.  ABS reviewed plans and documentation before and during construction, and, throughout the build period, ABS surveyed the vessel and witnessed critical testing.  Upon completion, ABS issued the *SEACOR Power* (then known as the *Dixie Endeavor*) a certificate of classification as a liftboat.  ABS's involvement continued over the vessel's almost twenty years of operation.  To maintain a valid certificate of classification, the *SEACOR Power* was required to undergo annual surveys completed by ABS; special surveys at intervals of 5 years; drydocking surveys, held twice in a 5-year period; and surveys for damages or repairs, as needed.

5.6     Other surveys were also completed by ABS on behalf of the Coast Guard, including surveys verifying compliance with the *International Load Line Certificate, the International Convention for the Safety of Life at Sea* (SOLAS), and the *International Convention for the Prevention of Pollution from Ships*. For efficiency, several different surveys were often completed by the attending surveyors during the same visit to the vessel.

5.7     The IMO International Safety Management Code (ISM Code) requires that vessel operators implement a Safety Management System (SMS).  Per the ISM Code, the flag state—the nation where a vessel is registered—must verify and certify that a company and vessel are complying with the provisions of the code.  ABS was delegated responsibility by the United States for verifying that SEACOR Marine and the *SEACOR Power* were in compliance with the ISM Code and US

5

regulations.  For instance, between March 18 and 25, 2021, ABS conducted a renewal audit to confirm that SEACOR Marine had an SMS that met the intent of the ISM Code.  The auditors did not find any nonconformities, and, on behalf of the Coast Guard, ABS issued SEACOR Marine a document of compliance with an expiration date of April 19, 2026.

5.8     On June 9, 2020, ABS conducted a safety management certificate audit for the *SEACOR Power* to confirm that the company and its shipboard management operated the vessel in accordance with the approved SMS.  ABS endorsed the safety management certificate valid until June 13, 2022.

5.9     In addition to audits by the flag state or recognized organization (such as a classification society), the ISM Code requires annual internal audits to validate compliance.   The last internal audit of SEACOR Marine was conducted on January 29, 2021, with no outstanding discrepancies.  The last internal audit of the *SEACOR Power* began on March 29, 2021, also with no discrepancies or non-conformities found by ABS, although the mate and SEACOR Marine Quality, Health, Safety, and Environment superintendent have admitted that, on the day of the capsizing, supplemental documentation was still being collected and not in the possession of ABS at the time of the internal audit.

5.10     During the internal audit, the company auditor verified that stability calculations were conducted based on a sample loading condition dated November 14, 2020.  The auditor noted in the record of the audit that stability was "calculated on '*Dixie Endeavor*' sheet."  The company could not provide a copy of the sample calculations when requested by investigators after the tragic incident occurred.  A report from the previous year's internal audit, conducted on April 9, 2020, also noted that stability was calculated using the "*Dixie Endeavor* Stability program."  Despite the

6

24-20438.39

vessel's having based stability calculations on testing performed prior to numerous changes made to the vessel's design, layout, purpose, and use, the vessel still passed ABS's audit.

5.11    In addition to the SMS and Marine Operations Manual, the *SEACOR Power* also had a Cargo Securing Manual approved by ABS.  The manual provided guidance for crews for stowing and securing different types of cargo to prevent them from sliding or toppling.

5.12    ABS failed to perform adequate inspections, audits, reviews, and classification of the *SEACOR Power*, and rubber-stamped the vessel, its components, its operations manual, its safety policies, and its safety management system when it was not safe to operate.

5.13    ABS was involved in the vessel from its birth until its untimely death as it sank into the waters off the coast of Louisiana.  ABS had dozens of opportunities to prevent this tragic incident, yet each time failed to do so.  The crew and their families paid the ultimate price for ABS's failure.

## VI.  CAUSES OF ACTION

### A.    Negligence

6.1    ABS was negligent in its inspection, review, audit and classification of the vessel *SEACOR Power.*  ABS inspected and approved the vessel for use despite obvious dangerous and unsafe characteristics of the vessel.  ABS approved the vessel's components, its operations manual, its safety policies, and its safety management system when it was not safe to operate

6.2    ABS owed the Decedents a duty to exercise ordinary care.

6.3    The injuries and deaths of the Decedents and resultant damages sustained by Plaintiffs were proximately caused by the negligence of ABS, including without limitation, one or more of the following acts:

(a)    failing to ensure the safety of workers aboard the vessel;

7

(b)     failing to properly assess the vessel;

(c)     failing to properly audit the vessel;

(d)     failing to properly inspect the vessel;

(e)     failing to properly certify the vessel;

(f)     approving the vessel's safety manual despite its deficiencies;

(g)     failing to ensure the vessel was meeting class certification standards;

(h)     failing to ensure the vessel met necessary stability requirements;

(i)     failing to properly train its employees and/or contractors;

(j)     failing to implement sufficient policies and procedures to have prevented this tragedy;

(k)     failing to identify inadequacies in Seacor Marine's safety management system;

(l)     failing to identify inadequacies in the vessel's marine operating manual;

(m)     violating its own safety rules, policies, standards, and regulations; and,

(n)     other acts of negligence and/or omissions to be shown at trial herein.

6.4     ABS conducted its testing, audits, inspections, and other work, in a negligent and unreasonable manner, and ABS's negligence was a direct, proximate, and producing cause of injury and death to the Decedents, and resultant damages to Plaintiffs.

**B.     Negligent Misrepresentation**

6.5     ABS was negligent in its inspection, review, and classification of the vessel *SEACOR Power*.   ABS inspected and approved the vessel for use despite obvious dangerous and unsafe characteristics of the vessel.

6.6     ABS negligently misrepresented the qualities, characteristics and seaworthiness of the Vessel to the detriment of the Decedents and crew members when ABS knew or reasonably

8

should have known that the Decedents and crew members would rely upon the representations. By serving aboard the Vessel, the Decedents and crew members relied upon the ABS certifications and approvals to their detriment. The Decedents and crew members in this lawsuit relied on ABS to properly conduct its classification, its approval of the design of the vessel, its approval of the Marine Operating Manual, its approval of the vessel's components, its approval of the vessel's safety policies and other policies, its approval of the vessel's stability calculations, and its approval of the vessel's safety management system when it was not safe to operate and its subsequent inspections and surveys and other work that occurred. Specifically, the Plaintiffs relied on the false impression created by ABS that the vessel was safe for everyone on board.

6.7     ABS failed to exercise reasonable care in gathering the information.

6.8     As workers who were present on the vessel, ABS knew or should have expected that they would be put in peril by the negligent acts and omissions of ABS, as asserted herein.

## C.     Gross Negligence

6.9     Defendants' acts and/or omissions rose to the level of gross negligence and warrant the imposition of exemplary damages. Defendants were well aware of the risk of harm to Decedents and the crew members on the vessel, yet exhibited conscious indifference to their rights, which proximately caused the injuries and death, and resultant damages complained of herein.

## VII.  DAMAGES

7.1     As a result of Defendants' acts and omissions, Plaintiffs have all lost a loved one and have been made to suffer and sustain significant damages. The Decedents each suffered unspeakable fear, terror, and pain–then lost their lives. The amount of monetary relief sought is within the sole discretion of the trier of fact, who will consider the evidence and decide what amount will

9

**TAB 6**

8.1    Deny that Plaintiffs are entitled to any monetary relief from Defendants as alleged in Paragraph 8.1 in Plaintiffs' FAP.

<u>**AFFIRMATIVE DEFENSES**</u>

**FIRST AFFIRMATIVE DEFENSE**

9.    Plaintiffs' FAP, in whole or in part, fails to state a claim against Defendants upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

10.    One or more of the Plaintiffs lacks standing to assert the claims for relief herein.

**THIRD AFFIRMATIVE DEFENSE**

11.    All of Defendants' actions relating to survey, inspection, audit, review, and/or classification of the Subject Vessel were governed by the terms and conditions of their engagement, the supporting invoices, and of their applicable Rules and Guides, and Defendants claim the benefits of all such terms and conditions, including any applicable statutes of limitation and limitations of liability.

**FOURTH AFFIRMATIVE DEFENSE**

12.    Plaintiffs' claims must be dismissed in whole or in part under the doctrines of derivative sovereign immunity, qualified immunity, and/or discretionary function immunity under federal law, including without limitation pursuant to 28 U.S.C. § 2680.

**FIFTH AFFIRMATIVE DEFENSE**

13.    Defendants invoke all the rights, immunities, and/or limitations granted to them under all applicable agreements and/or contracts, none of which are deemed to be waived.

**SIXTH AFFIRMATIVE DEFENSE**

9

**TAB 7**

**AGREEMENT GOVERNING THE DELEGATION OF**

**STATUTORY CERTIFICATION AND SERVICES**

**FOR UNITED STATES OF AMERICA FLAG SHIPS between the**

**UNITED STATES COAST GUARD and the AMERICAN BUREAU OF SHIPPING**

**1      Authority & Application**

This Agreement relies upon authority under 46 U.S.C. § 3316, 46 U.S.C. Subtitle II, Part B, Chapter 32, and 46 U.S.C. Subtitle II, Parts C and J.  The Agreement sets forth the conditions for cooperation between the United States Coast Guard, hereinafter referred to as the "Administration," and the American Bureau of Shipping, hereinafter referred to as "ABS" or the "Recognized Organization" ("RO"), with respect to performing statutory certification and services on behalf of the Administration, as outlined in various provisions of the Code of Federal Regulations (CFR) [1] , prominently 46 CFR §§ 8.100-8.450, and the *Code for Recognized Organizations* (RO Code) (IMO Resolution MSC 349(92)/MEPC 237(65)). The Administration and the RO may also be referred to individually as "Party" or collectively as "Parties."

**2      Purpose**

The purpose of this Agreement is to delegate authority to the RO to perform statutory certification and services on behalf of the Administration and to define the scope, terms, conditions, and requirements of that delegation.

**3      General conditions**

3.1    Definitions:

   .1     statutory certification and services means certificates issued, and services provided, on the authority of laws, rules and regulations set down by the Administration.  This includes plan review, survey and/or audit leading to the issuance of, or in support of the issuance of, a certificate by or on behalf of a flag State as evidence of compliance with requirements contained in an international convention or national legislation. This includes certificates issued by an organization recognized by the flag State in accordance with the provisions of SOLAS regulation XI-1/1, and which may incorporate demonstrated compliance with the structural, mechanical and electrical requirements of the RO under the terms of its agreement of recognition with the flag State;[2]

   .2     assessment means any activity to determine that the assessed entity fulfils the requirements of the relevant rules and regulations.  In the context of this Agreement, an "assessed entity" refers to a U.S. flag ship or ship management company; and [3]

   .3     in the context of this Agreement, "applicable instruments" refers to international conventions, international codes, and U.S. laws and regulations.

---

[1] Applicable Code of Federal Regulations provisions are listed in Appendix A.
[2] See 46 CFR 8.320 and RO Code Part 2, Section 1.3.
[3] See RO Code Part 2, Section 1.4.

24-20438.159

3.2     The RO shall determine the compliance of an assessed entity with the requirements of applicable instruments, as set out in this Agreement and its Appendices.

3.3     In so far as the statutory certification and services covered by this Agreement are concerned, the RO agrees to cooperate with port State control Authorities to facilitate the rectification of reported deficiencies or other discrepancies on behalf of the Administration when so requested, and report to the Administration.

3.4     Statutory services rendered and statutory certificates issued by the RO will be accepted as services rendered by, or certificates issued by, the Administration provided that the RO maintains compliance with the provisions of the RO Code and the national requirements.

3.5     The RO must maintain the minimum standards, conditions, and other requirements as set out in this Agreement and its Appendices.  This includes:

   .1     Load Line Assignment: the conditions and standards of 46 CFR § 42.07-35, as listed in Appendix B, for functions delegated pursuant to 46 U.S.C. § 5107;

   .2     Tonnage Measurement: the requirements of 46 CFR § 69.27, as listed in Appendix C, for functions delegated pursuant to 46 U.S.C. § 14103;

   .3     Inspection Alternatives: to be considered a Recognized Organization the RO must meet the conditions and standards of 46 CFR § 8.130 and 46 CFR § 8.230, as listed in Appendix B, to be delegated functions pursuant to 46 U.S.C. § 3316; and

   .4     Safety Management: the conditions and standards of 46 CFR §§ 8.130 and 8.230 and 33 CFR §§ 96.410, 96.460, 96.470, 96.480, and 96.490, as listed in Appendices B and D, to be delegated functions pursuant to 46 U.S.C. § 3316.

3.6     The minimum standards, conditions, and other requirements found within Appendices B, C, and D to this Agreement may be added to, but not reduced by, this Agreement.

**4       The execution of functions under authorization**

4.1     Functions in accordance with the general authorization:

   .1     the RO is hereby authorized to carry out statutory certification and services on behalf of the Administration with respect to U.S. flag ships, and/or companies responsible for operating such ships, to the extent specified in Appendix A to this Agreement and to require repairs to such ships in accordance with the applicable instruments;

   .2     surveys shall be carried out in accordance with applicable instruments and where applicable, the *Survey Guidelines under the Harmonized System of Survey and Certification, 2017* (IMO Resolution A.1120(30)), as may be amended); and

   .3     the RO is authorized to take relevant control measures in accordance with its standard procedures or as explicitly advised otherwise by the Administration, as is

24-20438.160

necessary to ensure that matters subject to surveys, audits and inspections correspond substantially with the particulars of the ship's certificates or the requirements of the applicable instruments.

4.2     Functions in accordance with special (additional) authorization:

Authorizations for services outside the scope of Appendix A to this Agreement will be dealt with as mutually agreed on a case-by-case basis.

4.3     Relationship between the Recognized Organization's statutory and other related activities:

The RO and its staff shall not engage in any activities that may constitute a conflict of interest with their independence of judgment and integrity in relation to their statutory certification and services. The RO and its staff responsible for carrying out the statutory certification and services shall not be the designer, manufacturer, supplier, installer, purchaser, owner, user, or maintainer of the item subject to the statutory certification and services, or an authorized representative of any of these parties.  The RO shall not be substantially dependent on a single commercial enterprise for its revenue.

**5       Legal basis of the functions under authorization**

5.1     Acts, regulations and supplementary provisions:

This Agreement is made pursuant to the statutory and regulatory authorities as set out in Appendices A – D to this Agreement and any supplementary provisions made by the Administration. [1]

5.2     Interpretations:

    .1      interpretation of the applicable instruments, as well as determining the acceptability of proposed equivalents or the acceptance of substitutes to the requirements of the applicable instruments, is the prerogative of the Administration.  The RO will cooperate in their establishment as necessary; and

    .2      interpretation of definitions or requirements found in this Agreement is the prerogative of the Administration.  The RO will be given the opportunity to consult with the Administration regarding the interpretation.

5.3     Deviations and equivalent solutions:

    .1      exemptions and deviations from, and equivalents to, the requirements of the applicable instruments are the prerogative of the Administration and must be approved by the Administration prior to issuance of associated certificates or documentation;

    .2      requests for exemptions, waivers, equivalencies or relaxations shall be forwarded to the Administration for review and approval prior to execution.  Such requests

---

[1] This Agreement is in compliance with the RO Code.

24-20438.161

must include supporting information and a recommendation from the RO concerning approval; and

.3      in instances where, temporarily, the requirements of an applicable instrument cannot be met under the particular circumstances, the RO will specify such measures or supplementary equipment as may be available to permit the ship to proceed to a suitable port where permanent repairs or rectifications can be effected or replacement equipment fitted.   Authorization to proceed is reserved for the Administration.

**6       Reporting to the Administration pursuant to this Agreement**

6.1     Procedures for reporting in the case of general authorization:

The RO shall establish relevant procedures for reporting to the Administration in the case of general authorization, in accordance with the requirements of applicable instruments and the additional requirements of the Administration.

6.2     Procedures for reporting in the case of special (additional) authorization:

The RO shall establish relevant procedures for reporting to the Administration in the case of special (additional) authorization, in accordance with the requirements of applicable instruments and the additional requirements of the Administration accompanying each special (additional) authorization.

6.3     Reporting on classification of ships:

The RO shall report assignment of, changes to, and withdrawals from class, as applicable.   See specific requirements of sections 6.5.6 and 6.5.7 of this Agreement.

6.4     Reporting on ships not fit to proceed to sea:

The RO shall report cases where a ship did not in all respects remain fit to proceed to sea without danger to the ship or persons on board, or a ship presents an unreasonable threat of harm to the environment.   See specific requirements of sections 6.5.2 through 6.5.5.

6.5     Other reporting:

.1      the RO shall notify the Administration immediately upon receiving a request for classification of a U.S. flag ship subject to statutory certification and services;

.2      the RO shall notify the Administration immediately upon becoming aware of a situation involving a major deficiency or serious safety-related issue that would normally be considered sufficient to detain a ship from proceeding to sea pending correction;

.3      the RO shall notify the Administration immediately upon becoming aware of a situation aboard a ship or within a company involving a major non-conformity. Unless otherwise specified by the applicable instrument, major non-conformity

24-20438.162

means, "an identifiable deviation which poses a serious threat to personnel or vessel safety or a serious risk to the environment and requires immediate corrective action; in addition, the lack of effective and systematic implementation of a requirement of the International Safety Management (ISM) Code is also considered a major non-conformity." [1]

.4      the above notifications shall contain the name of the ship or company, the IMO number, the official number, if applicable, or alternatively another distinct vessel identification number, the company identification number, and a description of the major non-conformity, deficiency or issue;

.5      the RO shall inform the Administration, as soon as possible, of any dangerous occurrences, accidents, machinery or structural breakdowns, or failures that they are aware of on a ship;

.6      the RO shall report to the Administration in writing the names, IMO numbers, and official numbers, if applicable, or alternatively other distinct vessel identification numbers of any ships removed from the RO's list of classed/certified ships for which the RO has performed statutory certification and services on behalf of the Administration.  The report should contain a description of the reason(s) for removal from class, and this should be made within thirty (30) days of the removal becoming effective; and

.7      in cases of transfer of the certification of a ship from one RO to another, if the RO is the gaining organization, the RO shall advise the Administration within one month of the issuance of the certificates.  If the RO is the losing organization, then the RO shall advise the Administration of the date of issuance of the certificates, and confirm the date, place, and any action taken to satisfy each overdue survey, overdue recommendation, and overdue condition of class.

## 7      Development of rules and/or regulations - Information

7.1     Cooperation in connection with development of rules and/or regulations – liaison meetings:

The RO shall allow participation in the development and review of its rules, procedures and/or regulations, specifically in the review process prior to finalization, by representatives of the Administration.

7.2     Exchange of rules and information:

.1      the Administration will provide the RO with all necessary documentation for the purpose of the RO's performance of statutory certification and services, and notify the RO of any additions, deletions, or revisions thereto in advance of their effective date and specify whether the Administration's standards exceed convention requirements in any respect.

---

[1] This definition of a major non-conformity is a reproduction of the definition found in 33 CFR § 96.120

24-20438.163

.2       the Administration shall be granted access to all plans and documents including reports and records on surveys, audits and inspections on the basis of which certificates are, or have been issued or endorsed by the RO;

.3       the RO shall provide free electronic access to the editions of its rules and/or regulations applicable to ships under the scope of authorization in Appendix A to this Agreement and listing of ships in its class; and

.4       the RO and the Administration, recognizing the importance of technical liaison, agree to cooperate towards this end and maintain an effective dialogue.

7.3    Language and form:

The RO shall establish, publish, and systematically maintain its rules and/or regulations printed and/or in electronic environment, an up-to-date version of which shall be provided in the English language, for the design, construction and certification of ships and their associated essential engineering systems.  All other documentation issued by or requested from the RO pursuant to this Agreement shall be in the English language.

## 8    Other conditions

8.1    Remuneration:

Unless agreed otherwise, the Administration will not provide remuneration for delegated statutory certification and services carried out by the RO.  The RO shall provide the Administration, upon request, with a current copy of the fee schedules, including changes to the schedule, for all functions delegated under this Agreement.

8.2    Rules for administrative proceedings:

The RO shall have a documented process to address appeals related to statutory certification and services in accordance with the requirements of the Administration.

8.3    Confidentiality:

In the event that, during the course of fulfilling its obligations under this Agreement, the RO submits Confidential Commercial Information (CCI) to the Administration, the Administration will protect, safeguard, and hold confidential such information in accordance with the provisions of the Freedom of Information Act (FOIA) at 5 U.S.C. § 552(b)(4) (Exemption 4) and Department of Homeland Security FOIA implementing regulations at 6 CFR § 5.7.  When submitting CCI, the RO must use "good faith efforts to designate by appropriate markings, either at the time of submission or within a reasonable time thereafter, any portion of its submission that it considers to be protected from disclosure under Exemption 4."  6 CFR § 5.7(b).  If the Administration receives a FOIA request for RO submitted CCI, the Administration will provide notice to the RO and will work with the RO to determine appropriate disclosure limitations.

24-20438.164

8.8     Settlement of disputes:

The Agreement shall be governed by and construed in accordance with United States law.  Any dispute arising in connection with this Agreement which cannot be settled by private negotiations between the Parties shall be settled finally by the tribunal (courts) as applicable.

8.9     Use of subcontractors:

.1      except as indicated in the sub-sections which follow, the RO shall perform statutory certification and services by the use of only exclusive surveyors and auditors, being persons solely employed by the RO, duly qualified, trained and authorized to execute all duties and activities incumbent upon their employer, within their level of work responsibility;

.2      if the RO finds in exceptional and duly justified cases that its own exclusive surveyor is not available, the RO shall inform the Administration who may then nominate an exclusive surveyor of another RO; and

.3      in accordance with applicable instruments, the RO may choose to outsource any service that affects conformity to requirements or accepts work of a third party approved by the RO.  The RO shall ensure that it fully controls the performance of such services through its quality management system.  For the purpose of accountability to the Administration, the work performed by the sub-contracted organization or service supplier constitutes the work of the RO.

8.10    Amendments:

Amendments to this Agreement and the Appendices will become effective only after consultation and written agreement between the Administration and the RO.  This Agreement or Appendix A to this Agreement may be amended independently from each other.  In the event that the regulations included in Appendices B, C, or D are amended in the Code of Federal Regulations, any changes will be considered in effect upon the publication of the final rule.  The corresponding appendix to this Agreement will be updated to reflect those changes as soon as practicable.

## 9.      Specification of the authorization from the Administration to the RO

Appendix A to this Agreement specifies the scope of authorization.

## 10.     The Administration's supervision of authorities delegated to the RO

The Administration shall be entitled to satisfy itself that the RO is performing its services in compliance with applicable instruments and this Agreement by establishing, or participating in, an RO oversight program for the purpose of supervising the authorities delegated to the RO under this Agreement by audits, inspections, supplementary surveys, quality cases, vertical contract audits or other monitoring activities.  For the purpose of this section:

.1      the Administration shall have access to the documentation of the quality management system of the RO;

24-20438.166

.2    the Administration shall have access to the internal instructions, circulars and guidelines of the RO;

.3    the Administration shall have access to the RO's documentation relevant to the Administration's fleet;

.4    the RO shall fully cooperate with the Administration's inspection and verification work;

.5    the RO shall keep appropriate information and statistics such as, but not limited to, damage and casualties, relevant to the Administration's fleet; and

.6    the RO shall keep the information and statistics of port State control detentions and notified deficiencies allocated to the responsibility of the RO.

## 11.    Points of Contact

For the United States Coast Guard                      For the American Bureau of Shipping

Name:   Office of Commercial Vessel Compliance   ABS Western Hemisphere
Address: 2703 Martin Luther King Jr Ave SE           1701 City Plaza Drive
         Washington, DC 20593                        Spring, TX 77389
E-mail:  flagstatecontrol@uscg.mil                   WHSurveyMarine@eagle.org

## 12.    Approving Officials

For the United States Coast Guard                      For the American Bureau of Shipping

on ___MARCH 6TH, 2020___                              on ___March 20, 2020___
Richard V. Timme                                      Mr. Christopher J. Wiernicki
Rear Admiral, U.S. Coast Guard                        Chairman, President and
Assistant Commandant for Prevention Policy            Chief Executive Officer
                                                      American Bureau of Shipping

24-20438.167

## Appendix A of the

### AGREEMENT GOVERNING THE DELEGATION OF

### STATUTORY CERTIFICATION AND SERVICES

### FOR UNITED STATES OF AMERICA FLAG SHIPS between the

### UNITED STATES COAST GUARD and the

### AMERICAN BUREAU OF SHIPPING

Dated   **MAR 0 6 2020**   , 2020, with effect from _____, 2020, covering the:

### APPLICABLE INSTRUMENTS

### and

### SCOPE OF AUTHORIZATION

**1        Scope of Authorization**

Pursuant to, and in accordance with, the Agreement and applicable instruments, and law and regulations as set out in Tables 1 and 2 of this appendix, the RO is authorized to carry out the associated statutory certification and services in Table 1 and 2 on behalf of the Administration, along with the additional authorizations as set out in section 2 of this appendix.  This includes empowerment of the RO to require repairs and perform plan review, stability review, inspection, survey, and audits of assessed entities which may lead to the issuance of, or be in support of, an applicable statutory certificate by or on behalf of the United States.  It is incumbent upon the RO to understand and follow the requirements of conventions, and laws and regulations set forth within Tables 1 and 2, and it is the Administration's prerogative to ensure the RO is properly administering the requirements of the conventions, and laws and regulations.

| Table 1 - International Instruments and Statutory Certifications and Services |
|---|
| **1   The International Convention on Load Lines, 1966, as modified by the 1988 Protocol, as amended  (ICLL66/88)** |
| 1.1     International Load Line Certificate |
| **2   International Convention on Tonnage Measurement of Ships, 1969, as amended (TM69)** |
| 2.1     International Tonnage Certificate (1969) |

24-20438.168

| 3 | **International Convention for the Safety of Life at Sea, 1974, and Protocols of 1978 & 1988, as amended (SOLAS 74/78)** |
|---|---|
| 3.1 | Cargo Ship Safety Construction Certificate |
| 3.2 | Cargo Ship Safety Equipment Certificate |
| 3.3 | Passenger Ship Safety Certificate |
| 3.4 | Document of Compliance for ships carrying dangerous goods according to International Maritime Solid Bulk Cargoes Code (IMSBC Code) and SOLAS 1974 as amended, regulation II-2/19 |
| 3.5 | Approval of Cargo Securing Manual |
| 3.6 | International Certificate for the Carriage of Dangerous Chemicals in Bulk according to the International Code for the Construction and Equipment of Ships Carrying Dangerous Chemicals In Bulk (IBC Code) |
| 3.7 | International Certificate for the Carriage of Liquefied Gases in Bulk according to the International Code for the Construction and Equipment of Ships Carrying Liquefied Gases in Bulk (IGC Code) |
| 3.8 | Document of Compliance Certificate and Interim Certificate according to the International Management Code for the Safe Operation of Ships and for Pollution Prevention (ISM Code) |
| 3.9 | Safety Management Certificate and Interim Certificate according to the International Management Code for the Safe Operation of Ships and for Pollution Prevention (ISM Code) |
| 3.10 | Authorize service providers for lifesaving appliances (LSA) according to MSC.402(96) |
| 3.11 | Conduct periodic audits on authorized service providers for LSA according to MSC.402(96) |
| 4 | **International Convention for the Prevention of Pollution from Ships, 1973, as modified by the Protocol of 1978, as amended  (MARPOL 73/78)** |
| 4.1 | Annex I - International Oil Pollution Prevention (IOPP) Certificate |
| 4.2 | Annex II - International Pollution Prevention Certificate for the Carriage of Noxious Liquid Substances in Bulk (NLS) |
| 4.3 | Annex III – Verification of Compliance for the Carriage of Harmful Substances in Package Form |
| 4.4 | Annex IV - International Sewage Pollution Prevention Statement of Voluntary Compliance (SOVC) |
| 4.5 | Annex V – Approval of Garbage Management Plan |
| 4.6 | Annex VI - International Air Pollution Prevention (IAPP) Certificate |
| 4.7 | Annex VI - International Energy Efficiency (IEE) Certificate |
| 4.8 | Annex VI – Statement of Compliance for Ship Fuel Oil Consumption Reporting |
| 5 | **International Convention on the Control of Harmful Anti-fouling Systems on Ships (AFS)** |
| 5.1 | International Anti-Fouling System (IAFS) Certificate |

24-20438.169

| 6 | **Other Codes, Conventions and Guidelines** |
|---|---|
| 6.1 | Polar Ship Certificate according to the International Code for Ships Operating in Polar Waters (Polar Code) |
| 6.2 | Mobile Offshore Drilling Unit Safety Certificate (1979), Mobile Offshore Drilling Unit Safety Certificate (1989), or the Mobile Offshore Drilling Unit Safety Certificate (2009) according to the IMO Code for the Construction and Equipment of Mobile Offshore Drilling Units, 1979, 1989 and 2009, as amended (MODU Code) |
| 6.3 | Certificate of Fitness for the Transport and Handling of Limited Amounts of Hazardous and Noxious Liquid Substances in Bulk on Offshore Support Vessels according to IMO Resolution A.673(16), as amended |
| 6.4 | Statement of Voluntary Compliance (SOVC) with Ballast Water Management Convention |
| 6.5 | Document of Compliance for Offshore Supply Vessels according to IMO Resolution MSC.235(82) |

| **Table 2 - U.S. Instruments** | |
|---|---|
| **1** **United States Code (U.S.C.)** | |
| | 33 U.S.C. § 1901-1911 Prevention of Pollution from Ships |
| | 46 U.S.C. § 3316 - Classification Societies |
| | 46 U.S.C. Subtitle II, Part C - Load Lines of Vessels |
| | 46 U.S.C. Subtitle II, Part J - Measurement of Vessels |
| | 46 U.S.C. Subtitle II, Part B, Chapter 32 - Management of Vessels |
| **2** **United States Code of Federal Regulations (CFR)** | |
| 2.1 | 33 CFR Chapter I, Subchapter F, Part 96, Subpart D – Authorization of Recognized Organizations to Act on behalf of the U.S. |
| 2.2 | 33 CFR Chapter I, Subchapter O, Part 151, Subpart A – Implementation of MARPOL 73/78 and the Protocol on Environmental Protection to the Antarctic Treaty as it Pertains to Pollution from Ships |
| 2.3 | 46 CFR Chapter I, Subchapter A, Part 8, Subpart D – Alternate Compliance Program |
| 2.4 | 46 CFR Chapter I, Subchapter E, – Load Lines |
| 2.5 | 46 CFR Chapter I, Subchapter D, – Tank Vessels |
| 2.6 | 46 CFR Chapter I, Subchapter G, Part 69 – Measurement of Vessels |
| 2.7 | 46 CFR Chapter I, Subchapter H, – Passenger Vessels |
| 2.8 | 46 CFR Chapter I, Subchapter I, – Cargo and Miscellaneous Vessels |
| 2.9 | 46 CFR Chapter I, Subchapter I-A, – Mobile Offshore Drilling Vessels |
| 2.10 | 46 CFR Chapter I, Subchapter L, – Offshore Supply Vessels |
| 2.11 | 46 CFR Chapter I, Subchapter O, – Certain Bulk Dangerous Cargoes |
| 2.12 | 46 CFR Chapter I, Subchapter U, – Oceanographic Research Vessels |

**2       Additional Authorizations**

2.1    Alternate Compliance Program (ACP):

 .1    pursuant to, and in accordance with, the applicable instruments as set out in Table 2, the RO is authorized to participate in the ACP, as outlined in Title 46, United States Code of Federal Regulations (CFR), Chapter I, Subchapter A, Part 8, Subpart D, Alternate Compliance Program, and perform the statutory certifications and services in accordance with international instruments as set out in Table 1.  ACP enrollment is authorized for U.S. flag vessels inspected, or to be inspected, for international voyages.  Vessels with novel or especially complex designs or operations, and for which the RO has no rules and/or the Coast Guard has no regulations or policies developed, are generally not eligible to enroll in the ACP. However, the Administration may choose to enroll such vessels subject to a Design Basis Agreement (DBA) [1] on a case-by-case basis.

 .2    the RO is authorized to conduct plan review and approval, initial and subsequent surveys, periodic re-inspections and examinations in the assessment of compliance with applicable instruments relevant to the following categories of U.S. flag vessels enrolled in the ACP:

  .1    Tank Vessels inspected in accordance with 46 CFR Chapter I, Subchapter D, § 31.01-3 - Alternate Compliance;

  .2    Passenger Vessels inspected in accordance with 46 CFR Chapter I, Subchapter H, § 71.15-5 - Alternate Compliance;

  .3    Cargo and Miscellaneous Vessels inspected in accordance with 46 CFR Chapter I, Subchapter I, § 91.15-5 - Alternate Compliance;

  .4    Mobile Offshore Drilling Units inspected in accordance with 46 CFR Chapter I, Subchapter I-A, § 107.205 - Alternate Compliance;

  .5    Offshore Supply Vessels inspected in accordance with 46 CFR Chapter I, Subchapter L, § 126.235 - Alternate Compliance; and

  .6    Oceanographic Research Vessels inspected in accordance with 46 CFR Chapter I, Subchapter U, § 189.15-5 - Alternate Compliance.

 .3    in addition to the conditions set out in the Agreement and the requirements set out in the applicable instruments, the following conditions will be adhered to in the execution of this authorized function on behalf of the Administration:

---

[1] DBAs rely upon the Administration's equivalency authorities under domestic regulations and international conventions.  DBA is a term used by the Administration to describe the document that memorializes any equivalencies and alternatives the Administration will accept for novel designs or configurations as at least effective as that specified in the applicable regulations or international conventions for the purpose of inspection and certification.

24-20438.171

.1      all requests for exemptions, waivers, equivalencies or relaxations shall be forwarded to the Administration for approval in accordance with Navigation and Vessel Inspection Circular 2-95, Change 3, or subsequently updated policy guidance. Such requests must include supporting information and a recommendation from the RO concerning approval;

.2      the RO shall submit for approval to the Administration proposed changes to any supplemental requirements to RO class rules that may affect any vessel inspection or certification activity by the RO under this Agreement;

.3      the RO shall, in addition to the requirements of class rules and applicable conventions, apply the supplemental requirements contained in the Administration's approved U.S. Supplement when performing any authorized function on behalf of the Administration pertaining to the survey and certification of U.S. flagged vessels enrolled in the ACP; and

.4      these conditions may be modified as deemed necessary by the Administration, and documented in an update to this Appendix.

2.2    National Load Line Assignments:

Pursuant to, and in accordance with, the applicable instruments as set out in Table 2 of this appendix, the RO is authorized to assign domestic U.S. load lines, including Special Service and Great Lakes load lines, on the Administration's behalf.[2]

2.3    National Tonnage Measurement:

Pursuant to, and in accordance with, the applicable instruments as set out in Table 2 of this appendix, the RO is authorized to issue national tonnage certificates on the Administration's behalf.

2.4    Policy Documents:

In addition to the applicable instruments listed in Tables 1 and 2 of this appendix, the Administration may issue policy documents to direct the RO in the performance of statutory certification and services. The Administration reserves the right to define and deconflict the language or requirements of these policies and any applicable instrument, and to modify policy as necessary.

**3.    Degree of Authorization**

The RO is granted authorization to perform the statutory certification and services provided for under this appendix and as applicable through issued policies.

---

[2] See 46 U.S.C. § 5107.

**TAB 8**

Commandant
United States Coast Guard

2100 Second Street, SW
Washington, DC 20593-0001
Staff Symbol: G-MSE-2
Phone: (202) 267-2988
Fax: (202) 267-4816

COMDTPUB P16700.4
NVIC    3-97

NAVIGATION AND VESSEL INSPECTION CIRCULAR NO. 3-97

Subj:  STABILITY RELATED REVIEW PERFORMED BY THE AMERICAN BUREAU
       Of SHIPPING FOR U.S. FLAG VESSELS

1. <u>PURPOSE</u>.  The purpose of this Circular is to outline the procedures for Coast Guard
   acceptance of stability related review and for stability letters issued for U.S. flag vessels by the
   American Bureau of Shipping (ABS).

2. <u>DIRECTIVES AFFECTED</u>.  This Circular cancels and supersedes Navigation and Vessel
   Inspection Circular (NVIC) NO. 3-84, Change 1.

3. <u>AUTHORITY</u>.  Title 46, United States Code, Part 3316 authorizes the Coast Guard to accept
   plan review, inspections, and examinations performed by ABS for compliance with Coast
   Guard rules and regulations for classed and unclassed vessels.

4. <u>APPLICABILITY</u>.

   a. This Circular is effective upon publication and is applicable to U.S. flag vessels, including
      vessels under the Alternate Compliance Program, that will receive a stability review by the
      ABS.  The stability of any U.S. flag vessel, with the exception of certain novel craft (as
      specified in paragraph 4.d of this NVIC), may be reviewed by the ABS on behalf of the
      Coast Guard.

DISTRIBUTION – SDL No. 134

|   | a | b | c | d | e | f | g | h | l | j | k | l | m | n | o | p | q | r | s | t | u | v | w | x | y | z |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| B |   | 2 | 10 |   | 3 |   |   | 1 |   |   |   |   |   | 132 | 1 |   | 5 |   |   |   |   |   |   |   |   | 30 |
| C |   |   |   |   | * |   |   |   |   |   |   |   | 1 | * |   |   |   |   |   |   |   |   |   |   |   |   |
| D | 1 | 1 |   | 1* |   |   |   |   |   |   |   | 1 |   | * |   |   |   |   |   |   |   |   |   |   |   |   |
| E |   |   |   |   |   |   |   |   |   |   |   |   |   | 2 | 2 |   |   |   |   |   |   |   |   |   |   |   |
| F | 1 |   | 1 |   |   |   |   |   |   |   |   | 1 |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| G |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |
| H |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |   |

*NON-STANDARD DISTRIBUTION: (See page 4.)

24-20438.937

b. Should a vessel's owner, or the owner's representative, withdraw a request for the ABS review under the provisions of this Circular, the Coast Guard may require certain inspections and plan review by Coast Guard personnel.  In such cases, the Marine Safety Center (MSC) will determine which approvals made by the ABS will be accepted by the Coast Guard.

c. This NVIC authorizes the ABS to review the stability booklet of a ship carrying grain in bulk.  Except that, review of grain ship loading stability information and issuance of a Document of Authorization and a Certificate of Loading will remain the sole purview of the National Cargo Bureau (NCB) as stated in Part 93.20 of Title 46 Code of Federal Regulations (CFR).  Where the ABS is requested to review the grain ship stability booklet, they will interact with NCB in an identical manner to the current relationship between the MSC and the NCB.  The review of ships carrying grain in bulk is discussed in greater detail in NVIC 5-94.

d. Stability review of certain types of vessels which are novel or have novel design features or which have limited history of certification are excluded from the provisions of this NVIC.  Stability review of these vessels may be reserved to the MSC.

5. <u>BACKGROUND</u>.

a. On April 16, 1984, the Coast Guard published NVIC 3-84, "Acceptance of  Stability Related Review Performed by the American Bureau of Shipping for New U.S. Flag Vessels."  On March 26, 1990, the Coast Guard published NVIC 3-84, Change 1, "Stability Related Review Performed by the American Bureau of Shipping for Load Lined U.S. Flag Vessels."

b. NVIC 3-84, Change 1, permitted qualified ABS personnel to conduct stability related reviews, including the witnessing of stability tests, on certain categories of load lined vessels.  This Circular expands the categories of vessels for which the ABS is authorized to perform stability reviews on behalf of the Coast Guard.

c. Prior to 1984, all vessel stability reviews were conducted by regional Coast Guard technical offices. Beginning in 1984, the Coast Guard authorized the ABS to perform stability reviews on certain categories of vessels that are issued Load Lines Certificates.  The ABS has been recognized as an authorized load line assigning authority of the Coast Guard for U.S. vessels since 1929, and is well-qualified to conduct stability related plan review on behalf of the Coast Guard.  In 1986, regional Coast Guard technical offices were replaced by the MSC.

24-20438.938

NAVIGATION AND VESSEL INSPECTION CIRCULAR NO 3-97

6. <u>IMPLEMENTATION</u>.

a. The ABS is authorized to issue stability letters on behalf of the Coast Guard for vessels for which they have conducted a complete stability review.

b. Plan review, inspections, and examinations performed by the ABS under the provisions of this circular may be subject to fees, in addition to normal load line assessment fees authorized by Title 46 CFR, Subchapter E.

c. Amplifying details for implementation of this Circular are contained in enclosures (1) and (2).

7. <u>APPEALS</u>.  If an owner or owner's representative objects to an action or decision of the ABS, discussion of the matter first with the ABS representative and then with the Commanding Officer (CO), MSC, is encouraged.  Should the matter be satisfactorily resolved, no further action is required. However, should the matter not be resolved, the decision of the ABS may be appealed using the procedures described in 46 CFR, Part 1.

8. <u>OVERSIGHT</u>.  Coast Guard oversight of stability related review performed by the ABS is intended to ensure that stability review activities conducted by the ABS, result in a level of safety equivalent to that which results from the same activities when conducted by the Coast Guard.  The MSC will conduct routine and non-routine oversight as described in enclosure (1).

9. <u>ACTION</u>.  Ship owners, or their representatives, are encouraged to follow the procedures and guidelines detailed in this Circular.  District Commanders, Officers-in-Charge Marine Inspections (OCMIs), and the CO, MSC, shall become familiar with the contents of this Circular and shall follow the specific procedures indicated herein.

Encl:    (1) Instruction for Implementation
         (2) Application of Coast Guard Requirements for Acceptance of Stability Related
         Review by the ABS for U.S. Flag Vessels

24-20438.939

NAVIGATION AND VESSEL INSPECTION CIRCULAR NO 3-97

Non-Standard Distribution:

C:e     New Orleans (90); Hampton Roads (50); Baltimore (45); San Francisco, Puget Sound (40); Philadelphia, Port Arthur, Honolulu (35); Miami, Houston, Mobile, Long Beach, Morgan City, Portland OR (25); Jacksonville (20); Boston, Portland ME, Charleston, Galveston, Anchorage (15); Cleveland (12); Louisville, Memphis, Paducah, Pittsburgh, St. Louis, Savannah, San Juan, Tampa, Buffalo, Chicago, Detroit, Duluth, Milwaukee, San Diego, Juneau, Valdez (10); Providence, Huntington, Wilmington, Corpus Christi, Toledo, Guam, Sault Ste. Marie (5).

C:m    New York (70); Sturgeon Bay (4).

D:d    Except Baltimore, Moriches and Grand Haven.

D:1    CG Liaison Officer MILSEALIFTCOMD (Code N-7CG), CG Liaison Officer RSPA (DHM-22), CG Liaison Officer MARAD (MAR-742), CG Liaison Officer JUSMAGPHIL, CG Liaison Officer World Maritime University, CG Liaison Officer ABS, Maritime Liaison Office Commander U.S. Naval Forces Central Command (1).

NOAA Fleet Inspection Officer (1).
U.S. Merchant Marine Academy (1).

24-20438.940

| Instructions for Implementation |
|---|

1. <u>COAST GUARD ADMINISTRATION</u>.

   a.   Administration of stability related review activities conducted by the ABS on behalf of the Coast Guard will include the following elements:

   (1)   The MSC will perform routine and non-routine oversight of stability review activities conducted by the ABS.  Routine oversight will consist of stability review conducted by the MSC independently of and concurrently with that of the ABS.  The number and type of independent reviews will be determined by the MSC.  Non-routine oversight will be conducted for cause, should the MSC become aware of any circumstance for which independent Coast Guard review is necessary in the interest of safety. Each such case will be reported to the Commandant and to the Coast Guard Liaison to the ABS by the MSC.  Additionally, Coast Guard personnel may accompany ABS surveyors on stability tests being conducted on behalf of the Coast Guard.

   (2)   Inconsistencies identified through a Coast Guard independent review should not be cause for delay in a vessel's delivery unless the variances are so serious as to jeopardize safety.  The MSC will maintain open communications with the ABS to attempt to identify and to resolve reasons for inconsistencies.  If matters cannot be so resolved, the MSC will refer variances to the Commandant (G-MSE) for final resolution.

   (3)   Coast Guard and ABS personnel will work in close cooperation.  Meetings between the Coast Guard and the ABS will be held as needed.

   b.   The MSC will be responsible for providing the ABS with guidance and/or stability letter formats illustrating current Coast Guard policies concerning stability letters for various vessel classes.

   c.   The MSC will keep the ABS abreast of any changes to U.S. laws and regulations, interpretations and policies of the Coast Guard that will affect stability related reviews performed by the ABS.

2. <u>ABS ADMINISTRATION</u>.

   a.   The ABS will advise the submitter by letter, with copies to the MSC and the cognizant Officer in Charge, Marine Inspection (OCMI), at the beginning of the stability related review stating that the review is being conducted in accordance with this Circular.  The ABS will note in its correspondence the specific Coast Guard requirements for which a review is being conducted.

24-20438.941

b.   The ABS will issue the stability letter for vessels receiving a complete stability review by the ABS.  The ABS will send one copy of all associated correspondence and the stability letter or approved trim and stability booklet to the MSC and cognizant OCMI.  The ABS will note in its correspondence and on the plans which plans were approved as complying with Coast Guard regulations and policies.  At least one copy of the plans and calculations will be returned to the submitter by the ABS.

c.   The ABS may dispense with the stability letter, in accordance with 46 CFR 170.120(b), provided the stability information can be placed on the Load Line Certificate.

d.   The ABS Americas will include in its permanent files, those stability related plans and calculations reviewed under this Circular or produced by the ABS in its review.  The contents of the file will be made available to the Coast Guard upon request.

e.   The ABS will refer questions concerning equivalency to Coast Guard regulations and policy to the MSC, with recommendations for acceptance or denial.

f.   The ABS will refer questions concerning apparent conflicts in or among Coast Guard regulations and policy, federal statutes, and international treaties to the MSC for resolution.

3.   <u>SUBMITTER'S RESPONSIBILITIES</u>.

The owner, or the owner's representative, desiring stability review under the provisions of this Circular must submit a request to ABS Americas with a copy to MSC.  A general description of the vessel, its operation, and route, along with the reason for the stability review should be included with the request.  Four complete sets of plans and calculations in support of these tasks should be submitted directly to the ABS.

24-20438.942

> ### Application of Coast Guard Requirements for Acceptance of Stability Related Review by the ABS for U.S. Flag Vessels

1. <u>ACCEPTED STABILITY RELATED REVIEW BY THE ABS</u>.

   The Coast Guard will accept stability related review action by the ABS for all applicable U.S. laws and regulations, international convention requirements, interpretations, and policies of the Coast Guard.  In cases where an incomplete package requires supplemental information, the ABS may issue a <u>temporary</u> stability letter, following the guidelines in the Marine Safety Manual, Vol. IV, section 6.C.2, and require resubmittals which are complete. Stability related reviews by the ABS may encompass the following tasks:

   a.   Examination and digitizing of vessel lines including buoyant appendages.

   b.   Approval of curves of form (hydrostatic curves) and cross curves, as applicable.

   c.   Examination of tank capacity tables.

   d.   Examination of preliminary stability calculations which may include weather, righting energy, floodable length, damage stability, subdivision, heeling moment, lifting, towing criteria, etc.

   e.   Approval of preliminary stability data and information to be incorporated into a temporary stability letter which could be issued immediately after completion of the inclining experiment.

   f.    Approval of procedures for inclining experiments and deadweight surveys.

   g.   Witnessing of inclining experiments and deadweight surveys.

   h.   Approval of stability test reports and lightship characteristics.

   i.   Approval of final stability calculations based on approved lightship characteristics.

   j.   Approval of Trim and Stability Booklets or other stability information for operating personnel.

   k.   Authorization of freeboard assignment based on approval of stability calculations and information.

   1.   Drafting of all restrictions that must be included in vessels' Trim and Stability Booklets or issuing simplified stability letters.

24-20438.943

2.    <u>STABILITY TEST PROCEDURES</u>.

The stability test procedure required by 46 CFR 170.085 must be approved by the
organization witnessing the test prior to the test.  These test procedures must meet the
requirements of 46 CFR 170.185.  The guidance in NVIC 17-91 and ASTM F-1321 should
be followed.  In cases where the ABS is witnessing a stability test as part of a partial
stability review, the MSC will determine, prior to the test, who will review related plans.

3.    <u>EXISTING VESSEL STABILITY RELATED REVIEW</u>.

Stability related review for existing vessels undergoing modifications may be performed by
the ABS; however, it is the responsibility of the vessel's owner or the owner's
representative to ensure that the ABS has the background information necessary to carry
out the review in its entirety.  If sufficient background information is not available, either
from the ABS, the owner, or Coast Guard files, the ABS will not undertake the stability
review without first consulting with the MSC.  If no published policy or regulations exist,
before beginning the stability related review, the ABS must consult with the MSC to
determine the specific stability standards to be applied. The MSC will determine whether it
is necessary to develop new standards to apply and will coordinate with Commandant as
needed

4.    <u>PARTIAL REVIEW.</u>

Upon request of the owner or the owner's representative, the MSC may, on a case by case
basis, authorize the ABS to perform a partial stability review.  This will allow the ABS to
perform certain portions of the stability review while leaving the remaining portions of the
review to the MSC.  The MSC will coordinate the application of partial stability reviews by
the ABS to ensure that a complete review is accomplished in an expeditious manner.  In
particular, inclining tests and deadweight surveys may be witnessed, reviewed, and
approved by the ABS while the stability analyses are reviewed and approved by the MSC
using the results of the ABS's review.  In certain instances, the MSC may authorize the
ABS to conduct stability analyses while the Coast Guard retains responsibility for
witnessing, reviewing, and approving the results of inclining tests and deadweight surveys.
Issuance of stability letters by the ABS will be authorized at the discretion of the MSC, in
such instances.

24-20438.944

**TAB 9**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CONSTANCE MILLARD and GERALD | § | |
| KRELL, Individually and as Representatives | § | |
| of the Estate of Jason Krell, Deceased; | § | |
| MICHELLE MARTIN, as tutrix and next | § | |
| friend of A.P., E.P., and M.S., minors, and as | § | |
| Representative of the Estate of Quinon Pitre, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| - against-. | § | 4:24-cv-1694 |
| | § | |
| AMERICAN BUREAU OF SHIPPING, ABS | § | ADMIRALTY CASE |
| GROUP OF COMPANIES, INC., ABSG | § | |
| ABSG CONSULTING INC., ABS QUALITY | § | |
| EVALUATIONS, INC., and ABS GROUP | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF LOUIS O'DONNELL

**LOUIS O'DONNELL** declares under penalty of perjury as follows:

1.      I am over twenty-one years of age, of sound mind, and am fully

competent and qualified to make the statements set forth herein.  My business

address is: 1701 City Plaza Drive, Spring, TX 77389.  I declare that all matters

stated herein are true and correct based upon my personal knowledge and/or my

own investigation of the facts of this matter.

1

24-20438.945

2.      I am employed by the American Bureau of Shipping ("ABS"),

currently holding the position of Assistant Chief Surveyor - Western Hemisphere.

ABS is an American classification society and a 501(c)(6) not-for-profit

organization, established in 1862 by the New York State legislature.  ABS's focus

of operations is to provide global classification services to the marine, offshore and

gas industries:

> Classification is performed by a classification organization such as
> ABS, a non-governmental organization that provides services through
> the development of standards called Rules. These Rules form the basis
> for assessing the design and construction of new vessels and the
> integrity of existing vessels and marine structures."

(https://ww2.eagle.org/en/Products-and-Services/classification-services.html).

ABS is positioned in more than 200 offices throughout the world.

3.      I have been employed by ABS for more than 28 years.  After earning

a Bachelor of Science in Marine Engineering from the Maine Maritime Academy, I

sailed for about four and a half years in various engine ratings on steam and motor

vessels, mostly tankers and large ocean-going vessels.  I joined ABS in October

1995 as a surveyor, then a Senior Surveyor, then a Principal Surveyor, and then a

Senior Principal Surveyor until February 2014.  In March 2014, I became Assistant

Chief Surveyor of the Americas Division.  In April 2018, I became Assistant Chief

Surveyor of the Western Hemisphere.

24-20438.946

4.      In my current position of Assistant Chief Surveyor - Western Hemisphere, I am responsible for all survey operations within the Western Hemisphere, which includes the Americas, Europe, Africa, and the Middle East.  I am also responsible for training and providing guidance to over 600 surveyors within the hemisphere.

5.      In addition to its role in the classification of vessels, ABS acts on behalf of the U.S. Coast Guard ("USCG") in performing inspections, audits, and reviews of vessels to assess their compliance with U.S. law as embodied in statutes, regulations and international maritime conventions.  ABS has been designated a Recognized Organization under Title 46, Chapter 33, of the U.S. Code, which authorizes the Secretary of Transportation to delegate to ABS the authority, among other things, to conduct inspections and examinations of vessels, and to issue certificates of inspections.  In addition to the general grant of authority to act as a Recognized Organization under Chapter 33, Title 46 of the U.S. Code includes specific delegations of authority to ABS to act on behalf of the USCG.

6.      In accordance with the statutory authority, ABS has entered into a formal agreement with the USCG to document the scope of ABS's authority as a Recognized Organization.  *See* Memorandum of Agreement Governing the Delegation of Statutory Certification and Services for United States of America Flag Ships between the United States Coast Guard and the American Bureau of

3

Shipping (hereinafter "USCG-ABS MOU"), available at

https://www.dco.uscg.mil/Portals/9/DCO%20Documents/5p/5ps/Alternate%20Co
mpliance%20Program/ABS-USCG%20RO%20Agreement_01JUN2020.pdf .  The

delegation in the MOU includes "plan review, survey and/or audit leading to the

issuance of, or in support of the issuance of, a certificate by or on behalf of a flag

State as evidence of compliance with requirements contained in an international

convention or national legislation."  USCG-ABS MOU § 3.1.1.

7.      Appendix A to the USCG-ABS MOU defines the scope of

authorization, including lists of the certifications and services that ABS is

authorized to carry out on behalf of the USCG.  The list includes, but is not limited

to, work governed by international conventions including International Load Line

Certificates, International Tonnage Certificates, and various certificates under the

International Convention for the Safety of Life at Sea.  Appendix A also specifies

the various Chapters of the U.S. Code and Code of Federal Regulations that are

incorporated into the MOU.

8.      Appendix B to the USCG-ABS Agreement contains various

conditions the USCG has imposed upon ABS including that, pursuant to 46 C.F.R.

§ 8.130(a)(22), ABS is to furnish information and required access to the USCG to

conduct oversight of ABS' activities related to delegated functions conducted on

24-20438.948

behalf of the USCG.  The USCG has electronic access to ABS records relating to delegated activities performed on behalf of the USCG.

9.      As Assistant Chief Surveyor - Western Hemisphere, my office regularly communicates with the USCG regarding delegated functions performed by ABS on behalf of the USCG.  USCG oversight of ABS includes attendance at vessels while ABS is performing surveys, audits, and other activities.

10.     When a company that owns or operates a U.S. vessel is required to comply with, or voluntarily complies with, the International Maritime Organization (IMO) International Safety Management Code (ISM Code) by implementing a safety management system (SMS), the flag state – the nation where a vessel is registered – must verify and certify that the company and its vessels are complying with the provisions of the ISM Code.  The USCG delegated authority to ABS to assess the extent to which Seacor Marine and the SEACOR POWER complied with the ISM Code and U.S. regulations.  ABS's delegated work in relation to safety management systems is a purely statutory activity, as opposed to a classification activity, and relevant regulations and statutory provisions are contained in 33 C.F.R. Part 96 and 46 U.S.C. Chapter 32.

11.     The process of verifying compliance with the ISM Code and U.S. Regulations includes both internal audits, performed by companies such as Seacor

24-20438.949

Marine, and external audits conducted by the USCG or ABS on behalf of the

USCG.  33 C.F.R. § 96.120 defines "safety management audit" as follows:

> Safety management audit means a systematic and independent examination to determine whether the safety management system activities and related results comply with planned arrangements and whether these arrangements are implemented effectively and are suitable to achieve objectives.

12.    ABS' work on safety management audits is governed by regulations

including 33 C.F.R. § 96.320, which states in part (emphasis original):

**§ 96.320 What is involved to complete a safety management audit and when is it required to be completed?**

(a) A safety management audit is any of the following:

(1) An initial audit which is carried out before a Document of Compliance certificate or a Safety Management Certificate is issued;

(2) A renewal audit which is carried out before the renewal of a Document of Compliance certificate or a Safety Management Certificate;

(3) Periodic audits including—

(i) An annual verification audit, as described in § 96.330(f) of this part, and

(ii) An intermediate verification audit, as described in § 96.340(e)(2) of this part.

(b) A satisfactory audit means that the auditor(s) agrees that the requirements of this part are met, based on review and verification of the procedures and documents that make up the safety management system.

6

24-20438.950

(c) Actions required during safety management audits for a company and their U.S. vessel(s) are—

(1) Review and verify the procedures and documents that make up a safety management system, as defined in subpart B of this part.

(2) Make sure the audit complies with this subpart and is consistent with IMO Resolution A.788(19), Guidelines on Implementation of the International Safety Management (ISM) Code by Administrations.

(3) Make sure the audit is carried out by a team of Coast Guard auditors or auditors assigned by a recognized organization authorized to complete such actions by subpart D of this part.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:     June 26, 2024
           Spring, Texas

_____
Louis O'Donnell

7

24-20438.951

**TAB 10**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| CONSTANCE MILLARD and GERALD | § | |
| KRELL, Individually and as Representatives | § | |
| of the Estate of Jason Krell, Deceased; | § | |
| MICHELLE MARTIN, as tutrix and next | § | |
| friend of A.P., E.P., and M.S., minors, and as | § | |
| Representative of the Estate of Quinon Pitre, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| - against-. | § | 4:24-cv-1694 |
| | § | |
| AMERICAN BUREAU OF SHIPPING, ABS | § | ADMIRALTY CASE |
| GROUP OF COMPANIES, INC., ABSG | § | |
| ABSG CONSULTING INC., ABS QUALITY | § | |
| EVALUATIONS, INC., and ABS GROUP | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF THOMAS M. GRUBER

**THOMAS M. GRUBER** declares under penalty of perjury as follows:

1.      I am over twenty-one years of age, of sound mind, and am fully competent and qualified to make the statements set forth herein.  My business address is: 80 M St. SE, Suite 480, Washington DC, 20003.  I declare that all matters stated herein are true and correct based upon my personal knowledge and/or my own investigation of the facts of this matter.

1

2.      I am employed by the American Bureau of Shipping ("ABS"),
currently holding the position of the Chief Engineer - Statutes.  ABS is an
American classification society established in 1862 by the New York State
legislature.  ABS's focus of operations is to provide global classification services
to the marine, offshore and gas industries.  ABS is a 501(c)(6) not-for-profit
organization that develops standards (or "Rules") in concert with other similar
classification societies for assessing the design and construction of new vessels and
the integrity of existing vessel and marine structures.  (*See*
https://ww2.eagle.org/en/Products-and-Services/classification-services.html).  ABS
is positioned in more than 200 offices throughout the world.

3.      I have been employed by ABS for nearly 36 years. After earning a
Bachelor of Engineering in Naval Architecture from the New York Maritime
College, I started out as an engineer in the Load Line and Stability Group in 1988.
A year later I spent six months in the small vessel structures group.  From 1992 to
2009, I was a Senior Engineer and a Principal Engineer in charge of the Load Line
and Stability Group.  Then, I moved to the Naval Engineering Group as a Principal
Engineer.  In 2012, I moved to the Chief Engineer's Office.

4.      ABS has been designated a Recognized Organization under Title 46,
Chapter 33, of the U.S. Code, which authorizes the Secretary of Transportation to
delegate to ABS the authority, among other things, to conduct inspections and

24-20438.953

examinations of vessels, and to issue certificates of inspections.  In addition to the general grant of authority to act as a Recognized Organization under Chapter 33, Title 46 of the U.S. Code includes specific delegations of authority to ABS to act on behalf of the U.S. Coast Guard (USCG).

5.      In my current position of Chief Engineer - Statutes, I oversee the implementation of statutory requirements across ABS' technical offices worldwide.  I also work as a liaison between our Houston office and  the Marine Safety Center and the Naval Architecture Branch, CG-ENG2, at USCG Headquarters for load line and stability matters.

6.      Under Chapter 51 of Title 46, Congress has delegated to ABS the authority to inspect vessels for load lines and issue load line certificates.  The USCG has further issued regulations formally appointing ABS as the prime assigning and issuing authority under the provisions of Articles 13 and 16(3) of the 1966 Load Lines Convention.  The USCG has further directed that the USA assumes full responsibility for load lines certificates issued by ABS on behalf of the USCG.

7.      Load lines are Plimsoll marks at the midpoint of the load line length along each side of a vessel's hull that establish the minimum safe freeboard / maximum draft to which a vessel may be loaded.  *See* 46 U.S.C. § 5104.  Load lines are assigned following a survey that considers the vessel's hull and fittings,

3

24-20438.954

hull strength, stability at all loading conditions, and topside design.  *See* 46 U.S.C.
§ 5105.  A typical set of load lines also includes marks for various conditions and
geographical areas, including tropical areas, summer and winter seasons, winter
season in the North Atlantic, and freshwater. Once the load lines have been
assigned, the vessel is issued a load line certificate providing the location of the
markings relative to the freeboard deck line and a reference to the approved
stability documentation.

8.      Under Navigation and Vessel Inspection Circular ("NVIC") 3-84,
issued in 1984, and NVIC 3-97, issued in 1997, that superseded NVIC 3-84, the
USCG delegated authority to ABS to perform reviews of the stability of U.S. flag
vessels under the Code of Federal Regulations, including 46 C.F.R. Subchapter S,
and to issue stability letters on behalf of the Coast Guard for vessels for which
ABS has conducted a complete stability review.

9.      Subchapter S sets forth minimum subdivision and stability
requirements for inspected vessels.  These regulations require the designer and
builder of the vessel to make calculations, conduct testing, and develop stability
documentation.  The stability documentation must be submitted to the USCG or
ABS, acting on behalf of the USCG, for review to ensure that a vessel's stability
complies with the regulations.  If, following the stability review, the USCG or

4

24-20438.955

ABS determines that the vessel meets regulatory requirements, a stability review letter is issued by the USCG or by ABS on behalf of the USCG.

10.  For liftboats inspected under the Subchapter L regulations for offshore supply vessels, the USCG and ABS apply the stability requirements that are contained in Part 174 Subpart H, "Special Rules Pertaining to Liftboats." Calculations in these regulations originate from the International Maritime Organization (IMO) *Code for the Construction and Equipment of Mobile Offshore Drilling Units, 1979 (MODU Code 1979)*.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:      June 26, 2024
            Washington, D.C.

Thomas M. Gruber

5