# United States Court of Appeals for the Fifth Circuit

———————————

No. 24-20438

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

August 29, 2025

Lyle W. Cayce
Clerk

GERALD KRELL, REPRESENTATIVE OF THE ESTATE OF JASON KRELL, *deceased*; MICHELLE MARTIN, REPRESENTATIVE OF THE ESTATE OF QUINON PITRE; CONSTANCE MILLARD, REPRESENTATIVE OF THE ESTATE OF JASON KRELL, *deceased*; DARREN ANTHONY ENCALADE, SR.; CAMERON ENCALADE; JANE HARTFORD, *Administratrix of* THE ESTATE OF ANTHONY HARTFORD; ANTRANAE HARTFORD; AMANDA WALCOTT-HARRIS, *Co-Administratrix of* THE SUCCESSION OF GREGORY WALCOTT; RUSSELL WAYNE SADDLER, *Co-Administrator of* THE SUCCESSION OF GREGORY WALCOTT; BRANDY WILLIAMS NORRIS, *Administrator of* THE SUCCESSION OF ERNEST J. WILLIAMS, JR.; BRYSON WILLIAMS; ZACHARY LOUVIERE; CHARLES SCALLAN; BRANDON AUCOIN,

*Plaintiffs—Appellees,*

*versus*

AMERICAN BUREAU OF SHIPPING; ABS GROUP OF COMPANIES, INCORPORATED; ABSG CONSULTING, INCORPORATED; ABS QUALITY EVALUATIONS, INCORPORATED; ABS GROUP, L.L.C.,

*Defendants—Appellants.*

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CV-1694

———————————————————

Before STEWART, CLEMENT, and WILSON, *Circuit Judges*.

PER CURIAM:[*]

In April 2021, shortly after departing from Port Fourchon, Louisiana, a vessel named the *SEACOR Power* capsized and sank during a severe thunderstorm, causing multiple deaths and injuries. In April 2024, the injured sailors and their representatives (collectively, the "Sailors") filed suit in Texas state court against Defendants-Appellants, the American Bureau of Shipping and related companies (collectively, "ABS"), advancing personal injury and wrongful death claims. ABS then filed a timely Notice of Removal in the Southern District of Texas under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). In response, the Sailors moved to remand to state court, the district court granted their motion, and ABS filed this appeal. Because ABS demonstrates that it qualifies for federal officer removal under 28 U.S.C. § 1442(a)(1), we REVERSE the district court's judgment and REMAND for further proceedings.

## I. FACTUAL & PROCEDURAL BACKGROUND

ABS is a nonprofit organization and one of the shipping industry's prominent "classification societies" that establishes and maintains standards for the construction and operation of ships. It also inspects ships for compliance with United States laws and commercial standards such as the "International Safety Management Code." In this role, ABS has been designated by federal statute as a "Recognized Organization." This means that the United States Coast Guard ("USCG") has delegated authority for it to perform mandatory inspections on United States flagged vessels to assess their compliance with federal law and regulations and with standards

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

embodied in international maritime conventions applicable to commercial vessels. 46 U.S.C. §§ 3316(b)(1), 5107(a); 46 C.F.R. §§ 8.100–8.450.

As a "Recognized Organization," ABS entered into an agreement with the USCG titled "Agreement Governing the Delegation of Statutory Certification and Services for United States of America Flag Ships" (the "Agreement"). The Agreement sets out "the conditions for cooperation between the [USCG] and [ABS]." In pertinent part, it sets out the applicable statutory and regulatory provisions that detail ABS's authority and the actions that it must take to retain that authority.

Here, ABS classified and provided technical requirements for the *SEACOR Power*. In that capacity, it reviewed plans and documentation before and during the vessel's building and construction, surveyed the vessel, and witnessed critical testing. Part of ABS's responsibility was to identify the hazards that ended up causing the *SEACOR Power* to capsize. "ABS's involvement continued over the vessel's almost twenty years of operation," up to the *SEACOR Power*'s capsizing in April 2021.

After the *SEACOR Power* capsized, the National Transportation Safety Board determined that "the probable cause . . . was a loss of stability that occurred when the vessel was struck by severe thunderstorm winds." Consequently, the Sailors contend that ABS failed "to ensure the vessel met necessary stability requirements." Based on this contention, the Sailors filed suit in Texas state court seeking to recover for personal injury and wrongful death claims. ABS then filed a timely Notice of Removal in the Southern District of Texas predicated on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). In response, the Sailors moved to remand to state court, arguing that the USCG did not exercise sufficient control or direction over ABS's activities to invoke the statute, that any control it did exercise was unrelated

No. 24-20438

to the actions at issue in this case, and that ABS did not have a colorable federal defense.

The district court granted the Sailors' motion to remand. It held that the USCG did not exercise "the requisite amount of control such to demonstrate ABS acted pursuant to a federal officer's direction," and therefore did not reach the questions of whether the control the USCG exercised over ABS was related to the actions at issue in this case or whether ABS had a colorable federal defense. ABS then moved for reconsideration. The district court summarily denied that motion, and ABS timely appealed.

## II. STANDARD OF REVIEW

Although orders remanding cases to state court are generally unreviewable, a remand order pursuant to 28 U.S.C. § 1442 "shall be reviewable by appeal or otherwise." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (quoting 28 U.S.C. § 1447(d)). In these circumstances, we review a district court's remand order de novo, "without a thumb on the remand side of the scale." *Id.* at 290 (quoting *Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398, 400 (5th Cir. 2018)).

We review the denial of a Rule 59(e) motion for abuse of discretion. *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

## III. DISCUSSION

On appeal, ABS contends that the district court erred in granting the Sailors' remand motion because ABS was "acting under" the direction of a federal officer, *i.e.*, the USCG, when it inspected the *SEACOR Power* and thus it properly invoked federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). We agree.

No. 24-20438

The federal officer removal statute allows nongovernmental defendants "acting under" the direction of the United States, a federal officer, or a federal agency to remove a case to federal court. 28 U.S.C. § 1442(a)(1). For a private entity to remove under this statute, the following four elements must be met: "(1) the defendant has asserted a colorable federal defense; (2) the defendant is a 'person' within the meaning of the statute; (3) the defendant acted pursuant to a federal officer's directions; and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 414 (5th Cir. 2024) (citing *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020)). "The absence of any element will defeat removal." *Id*. A private entity meets this standard if it demonstrates that it acted in "an effort to assist, or to help carry out, the duties or tasks of the federal superior" as part of a relationship involving "subjection, guidance or control." *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 151–52 (2007) (emphasis omitted); *see also St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 455 (5th Cir. 2021) (requiring courts to "examine[] the *relationship*" between the private entity and the government). Mere compliance with federal law is insufficient, "even if the law involves intense government regulations." *Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 415 (5th Cir. 2024) (citing *Watson*, 551 U.S. at 152–53).

In this case, we conclude that ABS was "acting under" the USCG's direction for purposes of federal officer removal. *See* 28 U.S.C. § 1442(a)(1). First, it "helps the [USCG] perform a job that, 'in the absence of a contract . . . the [USCG] itself would have had to perform.'" *See Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 348 (5th Cir. 2024) (quoting *Watson*, 551 U.S. at 153–54). Indeed, several statutory and regulatory provisions affirmatively require the USCG to ensure that these types of

No. 24-20438

inspections, reviews, audits, and certifications are carried out properly. *See, e.g.*, 46 U.S.C. §§ 3305(d)(1), 5107; 33 C.F.R. § 96.320(c). Second, § 3316 requires the USCG to maintain "an office that conducts comprehensive and targeted oversight of" ABS and any other "recognized organizations," with the ability to audit them. 46 U.S.C. §§ 3316(b)(1) & (g). And although the Sailors are correct that §§ 3307 and 3313 require vessels to comply with the inspection regime, other sections of the statute charge the Department of Homeland Security—acting through the USCG and ABS—with performing inspections and issuing certificates of inspection. *See* 46 U.S.C. §§ 3305, 3306, 3308, 3309 & 3316.

Third, there are numerous statutes and regulations that convey an express delegation of authority to ABS to act on behalf of the USCG. *See* 46 U.S.C. §§ 3316, 5107; 46 C.F.R. §§ 8.130(a), 8.200, 8.230. Section 3316 authorizes the Secretary of the Department of Homeland Security to delegate to ABS the authority to "review and approve plans required for issuing a certificate of [vessel] inspection," conduct inspections and examinations of vessels, and issue certificates of vessel inspections and related documents. 46 U.S.C. § 3316(b)(1)(A). Under § 5107, ABS has been delegated by the Department of Transportation "the authority to assign load lines, survey vessels, determine that load lines are marked correctly, and issue load line certificates under this chapter." 46 U.S.C. § 5107(a).

Fourth, the USCG has adopted a rule deeming that "[d]elegated functions performed by, and statutory certificates issued by [Registered Organizations] will be accepted as functions performed by, or certificates issued by" the USCG. 46 C.F.R. § 8.130(a). To that aim, the USCG has implemented a detailed set of regulations defining "Recognized Organizations'" scope of responsibility so that they may "become authorized to perform vessel inspection and certification functions delegated

No. 24-20438

by the [USCG]." 46 C.F.R. § 8.200.[1] Thus, vessel inspection obligations ultimately fall on the USCG, not the vessel. *See Caris MPI*, 108 F.4th at 348.[2]

Fifth, ABS satisfies the standard for "acting under" a federal officer's direction that this court recently set forth in *Caris MPI*. *See* 108 F.4th at 347–48. This is because its relationship with the USCG "involves 'detailed regulation, monitoring, or supervision.'" *Id.* (quoting *Watson*, 551 U.S. at 153–54). Like in *Caris MPI*, the Agreement here requires ABS to provide detailed records to the USCG and to submit to audits and inspections by the USCG. *Caris MPI*, 108 F.4th at 348. It also requires ABS "to understand and follow the requirements of conventions, and laws and regulations set forth within [the Agreement], and it is the [USCG]'s prerogative to ensure [that ABS] is properly administering the requirements of the conventions, and laws and regulations." This was part of a clear, detailed, and comprehensive delegation of authority from the USCG to ABS to perform specific required inspections, reviews, and audits, as well as to issue certifications. Accordingly, our reasoning in *Caris MPI* further supports our conclusion that ABS was "acting under" the direction of the USCG here. 108 F.4th at 348.

In sum, we hold that ABS was "acting under" the direction of the USCG for purposes of the federal officer removal statute when the events

---

[1] For example, the USCG set out more than twenty requirements that classification societies like ABS must meet to become "Recognized." *Id.* § 8.230. The Agreement then adopted these requirements for ABS specifically.

[2] As ABS notes, it would be illogical for Congress to go through "the trouble of establishing a vessel inspection regime for compliance with [United States] and international safety standards but neglect[] to designate any arm of the government to enforce that regime."

No. 24-20438

underlying this appeal occurred. *See id.*; *Watson*, 551 U.S. at 151–54. The district court thus erred in granting the Sailors' motion to remand this case to Texas state court and in denying ABS's motion for reconsideration of the same.

In light of our holding herein, we pretermit discussion of all remaining merits issues so the district court may address them in the first instance on remand. *See Lone Star Nat'l Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 427 (5th Cir. 2013).

## IV. Conclusion

For the foregoing reasons, we REVERSE the district court's judgment and REMAND for further proceedings consistent with this opinion.